**UNITED STATES of America,**
**Appellee,**

v.

**David Wade THOMPSON,**
**Appellant.**

**No. 73–1650.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 15, 1974.

Decided Feb. 19, 1974.

**360**

David A. Gerdes, Martens, Goldsmith, May, Porter & Adam, Pierre, S. D., for appellant.

Larry Von Wald, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before MATTHES, Senior Circuit Judge, HEANEY, Circuit Judge, and SMITH, Senior District Judge.*

HEANEY, Circuit Judge.

David Wade Thompson, an enrolled member of the Cheyenne River Sioux Indian Tribe, was indicted for the first de-

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

gree murder of Glen Alvin Mowrer on the Cheyenne River Reservation in violation of 18 U.S.C. §§ 1111 and 1153. He was tried before a jury, found guilty of second degree murder and sentenced to a thirty-year prison term.

The defendant contends on appeal that the trial court erred by:

(1) refusing to instruct the jury on involuntary manslaughter as a lesser included offense;

(2) denying the defendant's motion for a judgment of acquittal on the first degree murder charge;

(3) permitting an F.B.I. agent to testify as to statements made by the defendant; and

(4) refusing to instruct the jury on self defense.

On the afternoon of October 13, 1972, the defendant and his father, Max Thompson, left the home of the defendant's parents, located about thirty miles southwest of Mobridge, South Dakota, to visit his grandmother. The defendant placed a .22 caliber rifle in the car so that "if we got over there and seen an animal, badger or skunk trying to break in, we could destroy it." On their return home a few hours later, Max Thompson observed some of Mowrer's cattle in the "south pasture" and asked the defendant to drive the cattle "out of there." Use of the south pasture had been a continual source of friction between Max Thompson and Glen Mowrer. While the defendant was chasing the cattle out of the pasture, Glen Mowrer and two of his children were herding other cattle along a road north of the pasture. Mowrer intended to place these cattle in the pasture. When Mowrer saw that the defendant was chasing his cattle out of the pasture, he left those he was herding and confronted the defendant. A heated exchange resulted. The defendant then returned to his parent's home and reported the incident to his father. The defendant and his father drove back to the pasture. As they got out of the car at a gate leading into the pasture, Max Thompson removed the rifle and put it near the barbed wire fence. Max Thompson then stationed himself in a position to keep Mowrer from opening the gate. Mowrer and Max Thompson argued about putting the cattle in the south pasture, and at one point as the two physically scuffled, the defendant intervened. He hit Mowrer, picked up the gun, pointed it at Mowrer and told him to "get the law."

Mowrer went back to where his children were now holding the cattle. Soon thereafter, Terry Ducheneaux, Mowrer's brother-in-law, arrived and Mowrer returned to the gate. He and Max Thompson argued again when Mowrer attempted to open the gate and Max Thompson tried to prevent him from doing so.

While the two argued, the defendant mounted a horse with the rifle in his hand and rode toward the cattle being held by Mowrer's children. The defendant testified about the subsequent events as follows:

Q. Go ahead. You jumped on the horse, and what happened?

A. I started up the road at a lope. I made it as far as the edge of the bridge and that was when [Mowrer] caught up to me. He came up out of a ditch on the south side. And when he started cross-ways, he pulled his horse to a walk and started across the road.

He said, "You are not going to turn these cattle around." I told him they are not going through that gate. He said they were and I told him no, they are not. And I said, "Over my dead body." By that time he was about four feet in front of me. And he was still coming up. So I just raised this gun, so he stopped. And he said, "Go ahead and shoot, you son of a bitch, shoot." And then he didn't move. He sort of raised in his saddle up. And then I shot him.

Q. Why did you pull that trigger?

A. Reflex action. It was just an accident. I didn't mean to shoot him.

Mowrer was killed by this shot.

## INVOLUNTARY MANSLAUGHTER INSTRUCTION

The trial court instructed the jury on first degree murder, second degree murder and voluntary manslaughter. The court refused to instruct the jury on involuntary manslaughter,[1] stating:

> \* \* \* I don't think that anything stated by way of evidence would bring the lesser included offense of involuntary manslaughter in the picture at all.

We view this as error.

■ A defendant is entitled to an instruction on a lesser included offense if: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) *there is some evidence which would justify conviction of the lesser offense*; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, *i. e.*, a charge may be demanded by either the prosecution or defense. United States v.

Grant, 489 F.2d 27 (8th Cir., 1973); United States v. Whitaker, 144 U.S. App.D.C. 344, 447 F.2d 314 (1971).

It is conceded by the government that all but the third condition was met in this case. It argues that the trial court properly held that there was no evidence to justify a conviction of involuntary manslaughter. It reasons from Shaffer v. United States, 308 F.2d 654 (5th Cir. 1962),[2] that the defendant's handling of the gun necessarily involved an assault on Mowrer with a dangerous weapon, a felonious act, and that, therefore, the jury could not conclude that the defendant killed Mowrer in the commission of a "lawful" act or in the commission of "un unlawful act not amounting to a felony."

■ We reject this reasoning.[3] Section 1153 of Title 18 of the United States Code provides that the offense of assault with a dangerous weapon is to be defined in accordance with the laws of the state in which the alleged crime was committed.[4] The Cheyenne River Indian Reservation lies within South Dakota. Assault with a dangerous weapon under the applicable South Dakota statute [5] requires intent to injure"

---

1. 18 U.S.C. § 1112 provides in part:
   (a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:
   Voluntary—Upon a sudden quarrel or heat of passion.
   Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

2. The *Shaffer* Court, in discussing assault with a dangerous weapon under 18 U.S.C. § 113, stated:
   The only possible question is whether there is sufficient evidence to support the finding that the defendant had the requisite "intent to do bodily harm" to his guard or the other prisoners. This is not to be measured by the secret motive of the actor or some undisclosed purpose merely to frighten, not to hurt. This is to be judged objectively from the visible conduct of the actor and what one in the position of the victim might reasonably conclude. The present ability of the de-

fendant to fire the gun, the fact that he pumped a shell into the chamber, flourished the apparently loaded gun in the presence of the others, and threatened some or all that he would shoot unless they did his bidding was quite ample for the trier to conclude that' unless the threat alone was enough, the defendant intended bodily harm.
Shaffer v. United States, 308 F.2d 654, 655 (5th Cir. 1962), cert. denied, 373 U.S. 939, 83 S.Ct. 1544, 10 L.Ed.2d 694 (1963).

3. If the government is correct in its interpretation of *Shaffer*, we refuse to follow that decision.

4. 18 U.S.C. § 1153 provides in part:
   \* \* \* As used in this section, the offenses of \* \* \* assault with a dangerous weapon, \* \* \* shall be defined and punished in accordance with the laws of the State in which such offense was committed.

5. —Every person who, with intent to do bodily harm and without justifiable or excusable cause, commits any assault or any as-

or "to do bodily harm." Such intent, of course, can be found by the trier of fact from the objective circumstances, including the "visible conduct of the actor." It may be found in the face of a denial by a defendant of such an intent, but it need not be. A defendant is entitled to have his testimony—that he did not intend to injure or to do bodily harm— considered by the jury.

■ In this case then, it was for the jury to determine whether the defendant intended to do bodily harm or to injure Mowrer. The court's instructions effectively took this option from the jury, and it follows that it was error to reject the defendant's request for the involuntary manslaughter instruction. Had the involuntary manslaughter instruction been given, the jury could have weighed all of the evidence, including the defendant's statement, in determining his intent. The failure to give the instruction effectively precluded the jury from considering the defendant's statement that the pulling of the trigger was accidental. We, therefore, have no alternative but to reverse the judgment and remand this matter to the District Court for a new trial.

Because this case may be retried and an appeal may result therefrom, we briefly discuss the remaining issues.

## MOTION FOR JUDGMENT OF ACQUITTAL

■ The trial court did not err in denying the defendant's motion for a judgment of acquittal on the first degree murder charge. The evidence was sufficient to submit the question of premeditation to the jury.

## STATEMENTS TO F.B.I. AGENT AND SELF DEFENSE INSTRUCTION

■ We are convinced that the statements of the defendant to Special Agent Milton B. Kuhl were made voluntarily. There is no evidence of mental or physical coercion. In fact, the defendant's statements were not made in response to any interrogation by Agent Kuhl. The defendant was effectively advised of his rights and he knowingly and understandingly declined to exercise them. *See,* Hughes v. Swenson, 452 F.2d 866 (8th Cir. 1971).

■ There was no evidence on which to submit the issue of self defense to the jury.

Reversed and remanded for action consistent with this opinion.

MATTHES, Senior Circuit Judge (dissenting).

With due deference, I am unable to agree that the court should have instructed on the lesser included offense of involuntary manslaughter. I base my conclusion upon the lack of any evidence to warrant submission of that issue. Just recently, we enunciated again the principle that before a party is entitled to an instruction upon a lesser included offense, " 'the proof on the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense.' " United States v. Thompson, 490 F.2d 1218 (8th Cir. 1974).

My reading of the record leads me to conclude that the jury was justified in finding that appellant acted wilfully in killing Mowrer. It is undisputed that the deceased was not armed at any time during the heated argument and altercation between the parties. Conversely, appellant was armed with a loaded rifle which appellant deliberately aimed at the deceased, after the latter defied appellant to shoot him. The only contradictory testimony was the appellant's

sault and battery upon the person of another with any sharp or dangerous weapon or who, without such cause shoots, or attempts to shoot at another, with any kind of firearm, air gun, or any other means, with intent to injure any person although without intent to kill such person is punishable by imprisonment in the state penitentiary not exceeding five years or by imprisonment in a county jail not exceeding one year, or by a fine not exceeding five hundred dollars or by both such fine and imprisonment.
S.D.C.L. § 22–18–11 (1967).

self-serving statement that he pulled the trigger as the result of "reflex action. It was just an accident. I didn't mean to shoot him."

As Judge Heaney points out, the court submitted second degree murder and voluntary manslaughter. Thus, although appellant could have been found guilty of voluntary manslaughter which requires only a finding of intent but not of malice, the jury chose to decide that appellant was motivated by intent and malice in killing the deceased.

I am conscious that the district court imposed a rather heavy penalty upon the appellant, but that factor should not dictate reversal for another trial.