UNITED STATES of America, Appellee,

v.

John Wayne WALLETTE, Appellant.

No. 78–1185.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1978.
Decided July 26, 1978.

---

C. Charles Chinquist, Fargo, N. D., for appellant.

James R. Britton, U. S. Atty., Fargo, N. D., for appellee; Gary Annear, Asst. U. S. Atty., Fargo, N. D., on the brief.

Before BRIGHT, Circuit Judge, INGRAHAM, Senior Circuit Judge,* and STEPHENSON, Circuit Judge.

BRIGHT, Circuit Judge.

Appellant John Wayne Wallette appeals his conviction of second degree murder in violation of 18 U.S.C. § 1111 (1976). On November 5, 1977, appellant Wallette, an Indian, fatally shot Clarence Greatwalker, also an Indian, through the heart with a rifle. The incident occurred near Belcourt, North Dakota, and within the exterior boundaries of the Turtle Mountain Indian Reservation. The district court sentenced appellant to a ten-year prison term pursuant to the provisions of 18 U.S.C. § 4205(b)(2) (1976). We affirm the conviction.

Although an indictment charged Wallette with first degree murder, the jury returned a guilty verdict for the lesser included offense of second degree murder. On this appeal, Wallette contends that the trial court erred in refusing to instruct the jury that it might return a verdict for involuntary manslaughter under 18 U.S.C. § 1112 (1976) as a lesser included offense to first degree murder. Additionally, appellant contends that the trial court erred in permitting a witness to testify that when Wallette was placed in jail approximately two hours after the shooting, he threatened to kill his jailer. For reasons stated in this opinion, we reject these contentions.

I. *Factual Background.*

The essential facts are not in dispute. Wallette testified that on November 4, 1977, he had been drinking with his cousin, Dwayne Azure. He claimed that when these two were in the nearby community of Rolla, North Dakota, his cousin had struck him (apparently with his fist). After leaving his cousin, appellant met Clarence Greatwalker and Greatwalker's cousin, Francis Wanzie. The three went to visit Corbett Hall, Wallette's brother-in-law, from whom Wallette borrowed a .22 caliber automatic rifle. Wallette and Greatwalker proceeded to Rene Demontigny's residence on the Turtle Mountain Indian Reservation, near Belcourt, North Dakota. Wallette went into the Demontigny home where several persons were gathered and fired a shot over Dwayne Azure's head in order to scare him. That night Greatwalker and Wallette slept at the Demontigny residence. The next day, November 5, 1977, the two of them went with Bernard Thomas to a nearby bar and consumed beer and wine throughout the morning. They returned to the Demontigny residence with a supply of liquor and, along with several other persons, continued their drinking. Shortly after they returned from the bar, at about 12:30 p. m., Greatwalker and Thomas got into an argument. At this time, Wallette left the Demontigny residence and walked

---

* JOE M. INGRAHAM, United States Senior Circuit Judge, Fifth Circuit Court of Appeals, sitting by designation.

outside to Thomas' pickup truck. He took an automatic rifle from the truck and loaded it. Appellant Wallette then challenged Greatwalker to come outside, saying, "Clarence Greatwalker, you s. o. b., come on out here." Clarence Greatwalker went out of the door of the Demontigny house and, empty-handed, walked toward appellant. With the gun pointed directly at Greatwalker and the two individuals constantly remaining four to seven feet apart, Wallette kept backing up in a circular direction for some forty to fifty feet as Greatwalker continued walking toward him. Appellant then told Greatwalker to stop or he would shoot. Shortly thereafter, the gun fired and Greatwalker fell to the ground, mortally wounded. Wallette then started toward the house and a witness quoted him as saying, "I shot one of them, and I will shoot everybody in there."

The testimony also indicated that Wallette then forced entrance into the Demontigny house and there pointed the gun at and threatened several other persons.

Appellant left the scene with Thomas, and they drove to the Viking Inn at Rolla, North Dakota. Bureau of Indian Affairs police located Wallette at the bar later that afternoon and placed him under arrest. As Wallette was placed in his jail cell, BIA policeman Wilkie testified over objection that Wallette said to him, "Marty Wilkie, I am going to kill you. You are nothing but a fucking dog." This exchange took place approximately two hours after the shooting incident.

II. *The Lesser Included Offense Instruction.*

The trial court instructed the jury on the offense of first degree murder and the lesser included offenses of second degree murder and voluntary manslaughter. The court refused appellant's request to instruct the jury on the offense of involuntary manslaughter. Under 18 U.S.C. § 1112, manslaughter, as pertinent, is defined as follows:

(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds;

Voluntary—Upon a sudden quarrel or heat of passion.

Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

■ Wallette, in contending that he was entitled to an instruction on involuntary manslaughter, refers to his own testimony, in which he described the shooting of Greatwalker as accidental. Wallette testified that he did not remember pulling the trigger and asserted that the gun went off on its own. Appellant, however, did admit thinking about shooting "around Greatwalker" and in referring to the shooting incident stated that he intended to scare Greatwalker as he had scared Dwayne Azure.

In claiming error because of the trial court's failure to instruct on involuntary manslaughter, Wallette relies on our decision in *United States v. Thompson*, 492 F.2d 359 (8th Cir. 1974). In that case, a shooting incident occurred on a South Dakota Indian Reservation. Defendant Thompson had pointed his .22 caliber rifle at the victim, Mowrer, during the course of an argument relating to Mowrer's alleged trespass on the Thompson ranch. Thompson testified that he unintentionally pulled the trigger as a "[r]eflex action," and described the shooting as "just an accident." *Id.* at 361. In *Thompson*, as in the instant case, the trial court instructed the jury on first degree murder, second degree murder, and voluntary manslaughter, but refused to instruct on involuntary manslaughter. The majority[1] held that ruling amounted to prejudicial error, stating as follows:

Section 1153 of Title 18 of the United States Code provides that the offense of assault with a dangerous weapon is to be

---

1. Senior Circuit Judge Matthes dissented, maintaining that there was no evidence upon which to base an instruction on the lesser included offense of involuntary manslaughter.

defined in accordance with the laws of the state in which the alleged crime was committed. The Cheyenne River Indian Reservation lies within South Dakota. Assault with a dangerous weapon under the applicable South Dakota statute requires ["]intent to injure" or "to do bodily harm." Such intent, of course, can be found by the trier of fact from the objective circumstances, including the "visible conduct of the actor." It may be found in the face of a denial by a defendant of such an intent, but it need not be. A defendant is entitled to have his testimony—that he did not intend to injure or to do bodily harm—considered by the jury. [*Id.* at 362–63.]

The factual situations in *Thompson* and the instant case are similar, but the legal circumstances are different. Involuntary manslaughter is the unlawful killing of a human being without malice in the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death. 18 U.S.C. § 1112. Wallette's assault on Greatwalker was unlawful. It is therefore necessary to focus on the first part of the involuntary manslaughter definition and determine whether Wallette's conduct amounted to a felony. If some evidence exists warranting a finding that his conduct did not amount to a felony, a jury instruction on involuntary manslaughter would be proper. If, however, the evidence shows his conduct did amount to a felony, Wallette was not entitled to the instruction. To determine whether Wallette's conduct was felonious, we must look to North Dakota law.[2]

The applicable North Dakota law differs from the South Dakota law pertinent in the *Thompson* appeal. As distinguished from the South Dakota statute employed in

*Thompson*, which requires an "intent to injure" or "to do bodily harm" as an essential element of a felonious assault, relevant North Dakota law reads as follows:

*Reckless endangerment.*—A person is guilty of an offense if he creates a substantial risk of serious bodily injury or death to another. The offense is a class C felony if the circumstances manifest his extreme indifference to the value of human life. Otherwise it is a class A misdemeanor. There is risk within the meaning of this section if the potential for harm exists, whether or not a particular person's safety is actually jeopardized. [N.D.Cent.Code § 12.1–17–03 (1976).][3]

Here, appellant has testified that he pointed a loaded rifle at his victim with the admitted intent of shooting around Greatwalker and scaring his victim. The transcript discloses the following relevant testimony:

Q Why didn't you fire into the ground?

A I don't know. That's what I was thinking about, shooting around him or something, so he would listen to me.

\* \* \* \* \* \*

Q It was just an accident he got hit in the heart?

A He could have been hit any place, could have missed.

\* \* \* \* \* \*

Q You just wanted to scare him like you scared Dwayne?

A Yes.

Under North Dakota's reckless endangerment statute, the offense, as has been noted, is a class C felony "if the circumstances manifest his extreme indifference to the value of human life." In our judgment, reasonable people could not differ that appellant's conduct in intentionally pointing a

---

2. 18 U.S.C. § 1153 provides that assault with a dangerous weapon

which [is] not defined and punished by Federal law \* \* \* shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

3. N.D.Cent.Code § 12.1–32–01 (1976) classifies felonies and includes in the classification a class C felony, for which a maximum penalty of five years' imprisonment, a fine of $5,000, or both, may be imposed.

loaded weapon at his victim with his finger on the trigger, as Wallette admitted in his testimony, manifests that extreme indifference to the value of human life which differentiates reckless endangerment as a felony violation from reckless endangerment as a misdemeanor violation under the applicable statute.

Under the circumstances, the trial court did not err in refusing the requested instruction relating to involuntary manslaughter. Because of the statutory underpinning defining an assault in terms of reckless endangerment under North Dakota law, the opinion in *Thompson* is not controlling in this appeal.

III. *Appellant's Statement to Officer Wilkie.*

While being placed in his jail cell approximately two hours after the shooting incident, appellant threatened the jailer, Martin Wilkie, saying, "I am going to kill you." Appellant argues that the statement was irrelevant to any perception of his intent related to the shooting of Greatwalker. Furthermore, even if relevant, appellant insists the statement's prejudicial effect should have prevented its submission into evidence. We are inclined to agree that the evidence was not relevant to the prior shooting incident. Witness Wilkie's additional testimony that he had received similar threats from arrested persons who had been drinking mitigated the prejudicial effect of appellant's statement. But more importantly, in light of testimony admitted without objection that Wallette had made threats to others subsequent to the shooting, we think the admission of this questioned evidence constituted harmless error.

Accordingly, we affirm the conviction.