**UNITED STATES of America, Appellee,**

v.

**Roger Eagle ELK, Appellant.**

No. 81–1326.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 13, 1981.

Decided Sept. 15, 1981.

Terry L. Pechota, U. S. Atty., Sioux Falls, S. D., David L. Zuercher (argued), Asst. U. S. Atty., Pierre, S. D., for appellee.

Ramon A. Roubideaux (argued), Rapid City, S. D., for appellant.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

On October 1, 1980, the defendant, Roger Eagle Elk, was indicted for first degree murder under 18 U.S.C. §§ 1153 and 1111 (1976) in connection with the shooting death of Gary Dean Stoneman. On February 13, 1981, a jury found the defendant not guilty of first degree murder but guilty of second degree murder. The trial court[1] sentenced him to a forty year prison term. The defendant grounds this appeal upon the trial court's alleged error in: (1) denying the defendant's motions for a judgment of acquittal because of an insufficiency of evidence, and (2) denying the defendant's request for jury instructions on the lesser-included offenses of voluntary and involuntary manslaughter.[2] We affirm the conviction.

I. *Factual Background.*

In the early morning hours of September 6, 1980, the defendant and Richard Leader Charge went to a house near Rosebud, South Dakota, where the deceased, Gary Stoneman, was staying. Richard Leader Charge's purpose for going to the Stoneman house was to get Remina Eagle Elk, his girlfriend and the defendant's sister.[3] The defendant went to the Stoneman house to talk to Gary Stoneman about the defendant's mother's death on June 7, 1980. Evidence introduced at the trial indicated that the defendant believed that Stoneman was involved in that killing.

The defendant and Richard Leader Charge were armed with a shotgun and a rifle, referred to as a ".243," as they approached the house. At this point the testimony given at the trial sharply diverges. According to Richard Leader Charge's testimony, he was carrying the shotgun and the defendant was carrying the rifle. As they approached the door to the house the defendant said "no survivors." The two men broke open the back door of the house, entered and, using a flashlight held by the defendant, proceeded through the dark house to the bedroom. There they found Gary Stoneman and Remina Eagle Elk lying in bed together. Stoneman stood up and raised his arm. Richard Leader Charge stated that he believed that Stoneman was

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

2. *See* 18 U.S.C. § 1112 (1976).

3. Remina Eagle Elk had been at the Stoneman house since the afternoon of September 5, 1980. Richard Leader Charge had attempted to get her to leave with him on three separate occasions that day.

either attempting to block the light or reach for the shotgun which Leader Charge was holding. However, he stated that Stoneman did not get closer than three or four feet to either the defendant or Leader Charge, did not say anything, and did not have anything in his hands. The defendant immediately shot Stoneman in the chest and Stoneman went out an open bedroom window. The shot awakened Remina Eagle Elk.

The defendant gave two versions of the events transpiring in the Stoneman house. In a signed statement given September 15, 1980, after his arrest in connection with Stoneman's death, the defendant indicated that around 2 or 3 a.m. he and another individual entered the Stoneman house through the open back door. The defendant was carrying a shotgun and the other individual was carrying a rifle. Upon entering the bedroom, the defendant turned on the light and saw Stoneman and Remina Eagle Elk in bed together. Stoneman stood up and asked, "What the hell do you want?" The defendant responded, "Sit down," put a shell in the shotgun chamber, and said, "I want to know everything." Stoneman jumped out of the window. The defendant fired once, but did not know whether Stoneman was facing him or going out the window, and did not know whether the shot hit Stoneman.

At trial the defendant related substantially the same account except that he stated that Stoneman jumped out the window before the defendant fired at him with the shotgun. The defendant stated that he stuck the gun out the window, which was open at a forty-five degree angle at the bottom, and fired, totally missing Stoneman.

On September 13, 1980, Charles Stoneman found the body of his son, Gary Stoneman, clad only in his shorts, about twenty yards from the bedroom window. He found the latch on the back door broken, the door ajar, blood on the bedding, floor and wall in the bedroom, the window ajar and a trail of blood from the window to the spot where the body was found. An autopsy disclosed that Stoneman died as a result of a single gunshot wound to the chest. A portion of the bullet jacket which passed through the lungs and heart was found in the body. The bullet was from a rifle in the .22 caliber family.

## II. Sufficiency of the Evidence.

The basic principle which guides appellate review of challenges to the sufficiency of the evidence supporting a criminal conviction is that the conviction will be upheld if, taking the view most favorable to the government, there is substantial evidence fairly tending to support the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). A long line of decisions in this circuit have expounded upon this basic principle:

> In examining this alleged error, under well established principles of review, we must assume the truth of the Government's evidence and give the Government the benefit of all reasonable inferences that logically may be drawn therefrom. *United States v. Cox*, 580 F.2d 317, 323 (8th Cir. 1978) [*cert. denied*, 439 U.S. 1075 [99 S.Ct. 851, 59 L.Ed.2d 43] (1979)]; *United States v. Wisdom*, 534 F.2d 1306, 1309 (8th Cir. 1976). We are further guided in our analysis by the general rule that it is not necessary to sustain a conviction that the evidence "exclude every reasonable hypothesis except that of guilt [; it is enough] that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." *United States v. Shahane*, 517 F.2d 1173, 1177 (8th Cir.), *cert. denied*, 423 U. S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975). The essential elements of the charge may be proved by either direct or circumstantial evidence since circumstantial evidence is intrinsically as probative as direct evidence. *United States v. Cox, supra* at 323. The jury may not, however, be permitted to convict based upon mere conjecture or to conclude upon pure speculation or from passion, prejudice or sympathy. *Curley v. United States*, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied*,

331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

*United States v. Knife*, 592 F.2d 472, 475 (8th Cir. 1979).

■ The defendant's contention that the evidence is insufficient to sustain his conviction of second degree murder [4] rests primarily on the evidence in the record showing that: (1) Richard Leader Charge, the government's chief witness, testified against the defendant after entering into a plea bargain; [5] (2) Richard Leader Charge had the opportunity and motive to kill Gary Stoneman; (3) Richard Leader Charge's testimony contained inconsistencies and inaccuracies; (4) Richard Leader Charge's testimony substantially conflicted with that of the defendant. Thus, the defendant's argument generally can be characterized as an attack on the credibility of Richard Leader Charge. However, this argument misses the mark. "It is not for us to weigh the evidence or to determine the credibility of witnesses." *Glasser v. United States, supra*, 315 U.S. at 80, 62 S.Ct. at 469. These are matters entrusted to the jury. It is well established that the uncorroborated testimony of an accomplice, unless incredible or insubstantial on its face, is sufficient to sustain a conviction. *United States v. Abrahamson*, 568 F.2d 604, 607 (8th Cir. 1978).

■ In the instant case the record amply supports a conclusion that the testimony of Richard Leader Charge is neither patently incredible nor insubstantial. Furthermore, the government produced substantial evidence which not only corroborated the testimony of Richard Leader Charge, but independently supported the jury's conclusion that the defendant killed Gary Stoneman. The physical evidence established that Stoneman was killed by a rifle bullet in the chest. A trail of blood leading from the bedroom window to the body, and the blood in the bedroom clearly indicated that Stoneman was shot in the bedroom. There was not any evidence that a shotgun had been fired in the bedroom. In addition, there was testimony by witnesses other than Richard Leader Charge that the defendant had a grudge against the Stoneman family, suspected Gary Dean Stoneman of being responsible for the defendant's mother's death, and felt that he must get revenge. Remina Eagle Elk, the defendant's sister, testified that after the killing the defendant told her that Stoneman had killed their mother. About the time Stoneman's body was found, the defendant told her that he was handling the case, that he did not want her to talk to other police officers about it, and that she, Richard Leader Charge, and the defendant were in it together, and that if he was blamed he would get the electric chair.

Reviewing all the evidence in this case in the light most favorable to the government, as we must, we find that there was sufficient evidence to support the jury's conclusion that the defendant was guilty of second degree murder beyond a reasonable doubt.

### III. *Lesser-included Offense Instruction.*

■ A defendant is entitled to an instruction on a lesser-included offense if:

---

4. 18 U.S.C. § 1111 provides in part:

   (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
   Any other murder is murder in the second degree.

5. Richard Leader Charge voluntarily surrendered to the authorities after Stoneman's body was found and related the events of the morning of September 6, 1980, to them. Thereafter, Leader Charge was arrested for first degree murder. A plea bargain was struck pursuant to which Leader Charge testified against the defendant and pled guilty to first degree burglary in exchange for a motion to dismiss the first degree murder indictment against Leader Charge and a recommendation for a sentence of 25 years.

(1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or defense. *United States v. King*, 616 F.2d 1034, 1042 (8th Cir.), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980); *United States v. Thompson*, 492 F.2d 359, 362 (8th Cir. 1974). Moreover, it is beyond dispute that a defendant is not entitled to a lesser-included offense instruction unless the evidence adduced at the trial provides a rational basis upon which the jury could find him not guilty of the greater but guilty of the lesser offense. *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973); *United States v. Collins*, 652 F.2d 735 at 742 (8th Cir. 1981); *United States v. King*, 567 F.2d 785, 790 (8th Cir.), *cert. denied*, 435 U.S. 945, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978); *United States v. Brischetto*, 538 F.2d 208, 209 (8th Cir. 1976).

■ In the present case the controversy concerning the propriety of lesser-included offense instructions centers on the third and fourth requirements[6] of *Thompson*. The defendant argues on appeal that the trial court abused its discretion in denying the defendant's request for a jury instruction on the lesser-included offense of voluntary manslaughter under 18 U.S.C. § 1112.[7]

The lesser-included offense of voluntary manslaughter requires evidence of a killing upon sudden quarrel or heat of passion in contradistinction to evidence of malice required for second degree murder. *Beardslee v. United States*, 387 F.2d 280, 292 (8th Cir. 1967). After thoroughly examining the record in this case, we must conclude that the trial court did not err since the evidence taken in its entirety does not provide a rational basis for a jury to find the elements of sudden quarrel or heat of passion necessary to support a conviction for voluntary manslaughter.

■ It is undisputed that Gary Stoneman was killed by a bullet from a rifle. Consequently, the defendant's testimony must be viewed as entirely exculpatory in that he testified that he did not shoot Stoneman with a rifle but only shot at him with a shotgun. The defendant explained that he fired his shotgun out the bedroom window over the fleeing Stoneman's head in order to discourage him from returning to put up a fight. Furthermore, the defendant's testimony as to the emotional atmosphere surrounding the defendant's entrance into the Stoneman house in the early morning hours of September 6, 1980, does not support a finding of a heat of passion or sudden quarrel. The defendant stated he was scared but not terrified when Stoneman jumped out of bed. He characterized Stoneman as being surprised rather than mad. Moreover, when asked by the United States Attorney how he felt that night, the defendant responded "curious." Thus, if the jury were to accept the defendant's version of the events, it would have to conclude that the defendant did not kill Gary Stoneman,

**6.** In *United States v. Brown*, 551 F.2d 236, 239 n.4 (8th Cir. 1977) this court explained that:

The purpose of the fourth requirement of *Thompson* is that a lesser offense instruction be given only when the elements differentiating the two crimes are in sufficient dispute that the jury can rationally find the defendant innocent of the greater but guilty of the lesser offense. This requirement is intended to prevent the jury from capriciously convicting on the lesser offense when the evidence requires either conviction on the greater offense or outright acquittal. *See Sansone v.*

*United States*, 380 U.S. 343, 349–350, 85 S.Ct. 1004 [, 1009–1010] 13 L.Ed.2d 882 (1965); *Sparf v. United States*, 156 U.S. 51, 63–64, 15 S.Ct. 273 [, 277–278], 39 L.Ed. 343 (1895); *United States v. Harary*, 457 F.2d 471, 478–479 (2nd Cir. 1972).

**7.** Section 1112 provides in part:

(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

Voluntary—Upon a sudden quarrel or heat of passion.

and that his confrontation with Stoneman did not involve a sudden quarrel or heat of passion.

In *United States v. Sinclair*, 444 F.2d 888 (D.C. Cir. 1971), the court stated that the "refusal to give the lesser-included offense instruction is not error when defendant's testimony is completely exculpatory and, if believed, could only lead to acquittal * *." *Id.* at 890. Similarly, in *United States v. Chapman*, 615 F.2d 1294, 1300 (10th Cir.), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2947, 64 L.Ed.2d 827 (1980), the court cited this basic principle in rejecting the defendant's claim that the trial court erred in not giving a voluntary manslaughter instruction where the defendant testified that the shooting was accidental. Finally, in *United States v. Collins, supra*, at 742, this court found no rational basis for instructing on a lesser-included offense where the defendant claimed complete innocence throughout the trial. *See also United States v. Callison*, 577 F.2d 53, 56 (8th Cir.), *cert. denied*, 439 U.S. 873, 99 S.Ct. 209, 58 L.Ed.2d 187 (1978).

■ Nevertheless, the record in the present case is not entirely devoid of evidence which in *some circumstances* might *tenuously* support a finding of sudden quarrel or heat of passion. In support of his request to the trial court for a voluntary manslaughter instruction, defendant's counsel cited the testimony by the government's principal witness, Richard Leader Charge, to the effect that after he and the defendant entered the bedroom in which Gary Stoneman was sleeping, Stoneman jumped up and reached out apparently to block the light or grab the shotgun that Richard Leader Charge was carrying. Leader Charge testified that immediately thereafter the defendant shot Stoneman in the chest with the rifle he was carrying. However, in light of the defendant's testimony, and in light of other testimony by Richard

Leader Charge that at that moment Gary Stoneman did not have anything in his hands, did not speak, and did not touch or get closer than three or four feet to the defendant or Leader Charge, there are no reasonable grounds in this case to conclude that "at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinary reasonable person to act rashly and without deliberation and reflection, and from such passion, rather than from judgment." 2 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 41.14 (1977). This is not a case where support for a lesser-included offense instruction is "fairly inferable from the evidence, including a reconstruction of events gained by accepting the testimony of one or more witnesses only in part." *United States v. Sinclair, supra*, 444 F.2d at 889–90. *See also United States v. Chapman, supra*, 615 F.2d at 1300.

Accepting Richard Leader Charge's version of the killing, or any part thereof, a jury could still only rationally conclude that the defendant, if he shot Gary Stoneman, did so without adequate legal provocation. Thus, because there was no dispute on the elements differentiating voluntary manslaughter from murder, and because there was simply nothing in the evidence from which a jury could rationally find that the defendant killed Gary Stoneman upon a sudden quarrel or heat of passion, we must conclude that the trial court did not abuse its discretion in refusing defendant's proffered instructions on voluntary manslaughter.

■ The defendant also assigns as error the trial court's refusal to give a jury instruction on involuntary manslaughter. The foregoing discussion concerning voluntary manslaughter adequately disposes of this claim.[8] Our review of the record fails

---

**8.** The defendant relies on *United States v. Thompson*, 492 F.2d 359, 362 (8th Cir. 1974), to support his claim that the trial court should have instructed the jury on involuntary manslaughter. In *Thompson* this court held that an involuntary manslaughter instruction was re-

quired because there was an issue of fact as to whether the defendant was committing a felony at the time the killing occurred and the trial court's refusal to give the requested instruction effectively precluded the jury from considering the defendant's statement that the shooting

to disclose any evidence upon which a jury could rationally find that the defendant killed Gary Stoneman without malice "in the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a). Indeed, the testimony by the defendant that he did not shoot Gary Stoneman with a rifle and that he intentionally fired the shotgun at Stoneman to scare him virtually eliminates any basis for such an instruction. Therefore, the trial court did not err in refusing the involuntary manslaughter instruction.

Affirmed.

was accidental. *Id.* at 363. *Thompson* is clearly distinguishable from the instant case in that: (1) unlike Roger Eagle Elk, the defendant in *Thompson* admitted the shooting; (2) there was testimony by the defendant in *Thompson* that the shooting was accidental. *Id.* at 363.