UNITED STATES of America, Appellee,

v.

Roy Bruno ONE STAR, Appellant.

No. 92–1893.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 16, 1992.

Decided Nov. 18, 1992.

**1320**

Brent A. Wilbur, Pierre, S.D., argued, for appellant.

Dennis R. Holmes, Asst. U.S. Atty., Pierre, S.D., argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN, and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Defendant Roy Bruno One Star appeals his conviction for voluntary manslaughter under 18 U.S.C. § 1112. We reverse and remand for a new trial.

## I. BACKGROUND

All accounts of the events occurring the morning of January 12, 1991, are somewhat obscured by an alcoholic fog. Nevertheless, certain facts are clear. Murieldine Eagleman, ("Eagleman"), and Roy Bruno One Star, ("One Star"), lived together sporadically. At the time of her death, Eagleman had been visiting One Star at his parents' house on the Rosebud Sioux Reservation. During the course of the evening of January 11, 1991, and the morning of January 12, 1991, Eagleman, One Star, and a number of friends consumed a significant amount of alcohol. Eagleman became belligerent and started arguments with One Star and others. Early in the morning of January 12, 1991, Eagleman suffered a fatal stab wound as the result of a scuffle with One Star. This scuffle took place in the kitchen of his parents' house; there were no witnesses.

One Star was indicted for second-degree murder under 18 U.S.C. §§ 1111 & 1153. At trial, his attorney requested jury instructions for the lesser included offenses of involuntary manslaughter and simple assault. The court refused to instruct the jury on these charges, but did instruct the jury on the lesser included offense of voluntary manslaughter. One Star objected to the court's proposed jury instructions, and preserved this issue for appeal. One Star was acquitted of second-degree murder, but convicted of voluntary manslaughter. He was sentenced to 71 months imprisonment, and 3 years supervised release. One Star appeals his conviction.

## II. DISCUSSION

One Star raises two issues on appeal. First, he contends that the district court erred when it refused to instruct the jury on the lesser included offense of involuntary manslaughter. Second, he challenges the admission of Noah One Star's grand jury testimony at trial. Because we find that One Star was entitled to an involuntary manslaughter instruction, we reverse.

### A. Jury Instruction

■ It is well settled that a defendant is entitled to an instruction on any lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and to acquit him of the greater offense.[1] *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1996, 36 L.Ed.2d 844 (1973); *United States v. Lin-*

---

1. This principle of law has been restated in Rule 31(c) of the Federal Rules of Criminal Procedure which reads:

    Conviction of Less Offense. The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

coln, 630 F.2d 1313 (8th Cir.1980). We have formulated a five-point test to determine whether a defendant is entitled to a lesser included offense instruction. *United States v. Thompson*, 492 F.2d 359, 362 (8th Cir.1974). Under *Thompson*, a defendant is entitled to an instruction on a lesser included offense if:

> (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) *there is some evidence which would justify conviction of the lesser offense;* (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, *i.e.,* a charge may be demanded by either the prosecution or the defense.

*Id.* at 362.

In general, the "some evidence" requirement is satisfied by sharply conflicting testimony on the element distinguishing the greater offense from the lesser offense. *United States v. Medina*, 755 F.2d 1269, 1273 (7th Cir.1985). However, even in the absence of conflict in the testimony, the "some evidence" requirement may still be met if the conclusion as to the lesser offense may be inferred from the evidence presented. *Id.* The jury is free to believe the testimony of any witness in its entirety, or to reject that testimony as untrustworthy. The jury is also free to accept the testimony of one or more witnesses in part only, and thereby to create its own version of the events at issue. *United States v. Sinclair*, 444 F.2d 888, 889–90 (D.C.Cir.1971). A trial court need not give a lesser included offense instruction when there is no basis upon which the jury could rationally find the defendant innocent of the more serious count, but guilty of the lesser count. *See United States v. Elk*, 658 F.2d 644, 649 (8th Cir. 1981) (where there was no dispute on the elements differentiating manslaughter from murder, trial court did not err in refusing to give lesser included offense instruction).

The United States Code defines involuntary manslaughter as an unlawful killing: "[i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a) (1984) (Supp.1992).[2] Under the federal statute, involuntary manslaughter differs from murder to the extent that it requires a reduced level of culpability when committing the same physical act. The requisite mental state for involuntary manslaughter is "gross" or "criminal" negligence, a far more serious level of culpability than that of ordinary tort negligence, but still short of the extreme recklessness, or malice required for murder. The physical element of involuntary manslaughter, however, remains the same as the physical element for murder: unlawfully causing the death of another. It is well settled that involuntary manslaughter is a lesser included offense of murder. *United States v. Browner*, 889 F.2d 549, 552 (5th Cir.1989); *United States v. Iron Shield*, 697 F.2d 845 (8th Cir.1983).

In this case, the trial court refused to instruct the jury on involuntary manslaughter.[3] We find this refusal to be erroneous. The forensic pathologist who testified at trial agreed that the stab wound was consistent with a conclusion that Eagleman was stabbed, but was equally consistent with a conclusion that Eagleman fell on the knife. One Star testified that Eagleman was holding something in her

---

**2.** The parties have stipulated that One Star is an American Indian, and that the incident took place in Indian country. Therefore, under 18 U.S.C. § 1153, he can be prosecuted for homicide under the jurisdiction of the United States.

**3.** Even though he does not argue it in this appeal, One Star also requested that the district court instruct the jury on the lesser included offense of assault, and properly preserved his objection to the court's denial of that instruction. We make no finding on this instruction, but note that on remand, the issue may come up again.

hand, that he thought he pushed Eagleman, and that she fell, knocking over a table and a chair before falling to the ground. One Star's mother, and his brother Alex also testified that the table had been knocked over, but that they had straightened the room before the police arrived. Alex One Star testified that upon his arrival at the scene, immediately after the accident, One Star said "she fell." Transcript vol. 2 at 319. One Star sought medical help for Eagleman, and tried to give some remedial first aid. The police officers who investigated the homicide reported that One Star's grief at Eagleman's injury was sincere, and One Star repeatedly testified that he had no intent to harm Eagleman, but that he might have shoved her. In addition, both One Star and Eagleman were intoxicated at the time of her death.

Therefore, there was at least some evidence in the record that would permit reasonable jurors to conclude that One Star's conduct was grossly negligent, and that his negligence was the cause of Eagleman's death. One Star was thus entitled to a jury instruction on involuntary manslaughter.

B. Grand Jury Testimony

The district court admitted the grand jury testimony of Noah One Star, Roy Bruno One Star's brother.[4] Noah One Star indicated that he would plead the Fifth Amendment in response to questions at trial. The district court determined that he was therefore unavailable under Fed. R.Evid. 804. *United States v. Carlson*, 547 F.2d 1346, 1354 (8th Cir.1976). The defendant objected to the introduction of this testimony on the grounds that Noah One Star was not unavailable, and that even if he were unavailable, there were no

adequate indicia of reliability to justify admission of the grand jury testimony. The court overruled these objections, and admitted Noah One Star's entire grand jury testimony on the theory that it constituted a statement against his penal interest.[5] Fed. R.Evid. 804(b)(3).

The admission of out-of-court statements by an unavailable declarant to inculpate a third party requires careful thought. Because the defendant has no opportunity to cross-examine the witness, the court must be thoroughly satisfied that the statements are accompanied by significant indicia of reliability. Absent factors that clearly indicate the trustworthiness of the statements, a confrontation clause problem arises. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *United States v. Riley*, 657 F.2d 1377, 1383 (8th Cir.1981). In this case, the government sought to admit the testimony under Fed.R.Evid. 804(b)(3) as a statement against interest, or alternatively, under the catch-all exception of Fed.R.Evid. 804(b)(5).

We have previously spelled out a test to determine the trustworthiness of a statement against the declarant's penal interest. Factors to be considered in such an analysis include: "(1) whether there is any apparent motive for the out-of-court declarant to misrepresent the matter, (2) the general character of the speaker, (3) whether other people heard the out-of-court statement, (4) whether the statement was made spontaneously, (5) the timing of the declaration and the relationship between the speaker and the witness." *United States v. Rasmussen*, 790 F.2d 55, 56 (8th Cir. 1986). The statements at issue in this case were made, under oath, by Roy Bruno One Star's brother, and were clearly against Noah One Star's penal interests.[6] In addi-

---

4. Noah One Star testified that he cleaned the knife that had inflicted the fatal wound and then hid it in the basement. A few hours later, after being informed that Eagleman had died, he voluntarily turned the knife over to investigating officers. Noah One Star also testified that he heard some shuffling and that he heard Eagleman say "Roy, don't" just before he heard her fall. Transcript vol. 2 at 379–80.

5. Noah One Star could have been prosecuted for misprision of a felony under 18 U.S.C. § 4.

6. Roy Bruno One Star urges that this testimony be rejected because Noah One Star is serving two consecutive thirty year sentences for kidnapping and rape. If, at the time he had given the grand jury testimony, Noah One Star had been serving those prison sentences, or even if he had been under investigation for those

tion, Noah One Star's grand jury testimony was consistent with spontaneous statements he made to officers at the inception of the investigation, and was corroborated by physical evidence.[7] Accordingly, we find that the admission of Noah One Star's grand jury testimony is permitted under *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1979).

We are disturbed, however, that the trial court admitted the entire grand jury testimony without redacting those parts that were not against Noah One Star's penal interest and that may not, therefore have carried the same indicia of reliability. While we make no finding regarding the failure to redact this testimony, we urge the court, on remand, to redact Noah One Star's grand jury testimony and to admit only those statements which are against his penal interest.

## III. CONCLUSION

For the reasons stated above, we vacate Roy Bruno One Star's conviction for voluntary manslaughter, and remand for a new trial.

crimes, we would be inclined to agree with One Star's contention that the requirement of sufficient indicia of reliability had not been met. *United States v. Snyder*, 872 F.2d 1351, 1354–57 (7th Cir.1989); *United States v. Riley*, 657 F.2d 1377, 1384 (8th Cir.1981). However, the crimes that resulted in Noah One Star's conviction had not yet occurred at the time of the grand jury testimony, and therefore cannot affect the credibility of those statements.

7. The investigating officers found the knife in the location, and the condition, which would be consistent with Noah One Star's testimony.