**UNITED STATES of America, Appellee,**

v.

**Helen FELIX, Appellant.**

No. 92–3469.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1993.

Decided June 18, 1993.

Robert B. Anderson, Pierre, SD, argued, for appellant.

Mikal Hansen, Asst. U.S. Atty., Pierre, SD, argued, for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

WOLLMAN, Circuit Judge.

Helen Felix and Valerie Heron were indicted and tried before a jury for their respective roles in the mob beating of Robert Black Feather. The jury acquitted Heron and found Felix guilty of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(f). Felix appeals from her conviction on the grounds that the district court[1] erred in refusing to give a lesser included offense instruction and in not declaring a mistrial. We affirm.

## I.

On August 29, 1991, a group of about twenty-five people were having a party at Felix's residence at the Winner, South Dakota, Indian Housing area. The members of the group continued to drink, sing, and play loud music into the early morning hours. At approximately 4:00 a.m., Robert and Bonnie Black Feather, who lived across the street from the Felix residence, called the Winner Police Department to have the party quieted down. The Black Feathers were informed that the Bureau of Indian Affairs officer responsible for patrolling the Indian Housing area was off duty and that the Winner Police Department did not respond to routine calls from the Indian Housing area because it has no jurisdiction there.

At about 5:00 a.m., the Black Feathers walked over to the Felix residence. Robert, carrying a baseball bat for personal protection, asked Felix to turn down the music, which was blaring from two stereo speakers located in the open basement windows of the Felix home. Felix declined, and ordered Robert to get out of her yard, whereupon the two became engaged in an argument. Robert was pelted with full beer cans thrown by some of the partygoers. Felix herself threw one beer can and had another in hand. Bonnie Black Feather, believing that Felix was about to throw the can at Robert, grabbed Felix, and Felix fell to the ground. At about the time that Felix and Bonnie were struggling, Robert silenced the loud music by kicking over the stereo speakers (as he testified) or by striking them with the baseball bat (as other witnesses testified).

As Robert was leaving the Felix yard to return to his house, Felix's son Pete struck him from behind on the left temple with a metal bar. Several individuals then attacked Robert and knocked him down. A group of people surrounded Robert and beat and kicked him for five to fifteen minutes while he lay helpless on the ground. Some members of the mob struck him with clubs, some hit him with their bare hands, and some kicked him. The beating stopped only when Bonnie Black Feather returned from the Black Feather residence with a revolver and fired two warning shots. The attackers then quickly scattered.

As a result of the attack, Robert Black Feather's skull, jaw, and left leg were fractured. The mid-portion of his face was crushed, including his nose, his right cheekbone, and both eye sockets. He suffered multiple contusions on his shoulders, rib cage, back, and left leg. He suffered a total loss of vision for ten days following the at-

---

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

tack and has experienced a fifteen percent permanent loss of vision in his left eye.

Numerous witnesses testified that Felix was involved in the beating. Some witnesses testified that after Felix's argument with Robert and her physical struggle with Bonnie, she yelled "Get him!" Eight witnesses testified that they had seen Felix in the group surrounding Robert as he was being beaten: some testified that they had seen Felix beating him with a club; some stated that they had seen her punching him with her hands; and others testified that they had seen her standing beside Robert but had not seen her strike him. Additionally, some witnesses testified that Felix had yelled such comments as, "Get him," "Hit him again," and "Kill him," as Robert was being pummelled.

Felix denied any involvement in the assault. She admitted that she had yelled and screamed upon being knocked down, but could not remember what she had said. She claimed that her glasses had been knocked off during her confrontation with Bonnie and that she had spent several minutes looking for them. Although she admitted that the attack took place only a few feet from where she was looking for her glasses, she testified that she had not seen the attack and did not know that it had occurred until it was over.

The district court instructed the jury on the two offenses charged in the indictment: assault with a deadly weapon with the intent to do bodily harm, in violation of 18 U.S.C. § 113(c), and assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(f). The court further instructed the jury that it could find a defendant guilty of a charged offense even if she had not personally done all the acts constituting the offense, if she had aided and abetted the commission of the offense. Although Felix proposed a jury instruction on the lesser included offense of assault by striking, beating, or wounding, in violation of 18 U.S.C. § 113(d), the court refused to give it, stating that the evidence did not support the proposed instruction.

The district court submitted the case to the jury at 12:55 p.m. on Thursday, August 6, 1992. The court released the jury at 6:00 p.m. that evening, and the jury resumed deliberating on Friday morning at 9:00 a.m. During its deliberations the jury submitted several questions to the court. At approximately 4:30 p.m. on Friday, the jury informed the court by note that "We are hopelessly deadlocked." The court decided to give the jury an *Allen* charge. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Because it was almost five o'clock, however, the court decided to excuse the jury until Monday morning and give the *Allen* charge when the jury resumed deliberating. Felix moved for a mistrial on the ground that the jury was deadlocked. The court denied the motion and submitted to the jury a note that read as follows:

I have concluded that at this hour you must discontinue your deliberations and report at 9:00 a.m. on Monday, August 10, for the resumption of your deliberations. Accordingly, you must follow these rules:

1. Do not further discuss the case with any person. This includes each other.

2. Do not do any research on your own by consulting any independent source of information.

3. Do not resume any deliberations until all have assembled on Monday.

4. The Court will be providing you with an additional instruction as to your duties upon your return for deliberations.

A United States deputy marshal delivered the note to the jury. Within seconds of receiving the note, the jury informed the deputy that it had reached a verdict.

The district court decided not to receive the jury's verdict at that time and gave the jury the following note:

The notice of your having arrived at a verdict was sent to the Court after you had been advised by the Court to cease deliberations. Accordingly, the Court will not receive your verdict at this time.

You must return on Monday, August 10, 1992, at 9:00 a.m. for the purpose of resuming your deliberations and returning whatever verdict—whatever your verdict may be on Monday.

Felix moved for a mistrial on the ground that any verdict from the jury would be the product of coercion. The court denied the motion.

The jury resumed deliberations at 9:00 a.m. on Monday, August 10. Within five minutes, it announced that it had reached a verdict. Felix once again moved for a mistrial on the ground that the jury verdict had been coerced. The district court denied the motion and received the verdict.

The jury found Felix guilty of assault resulting in serious bodily injury and not guilty of assault with a dangerous weapon; it found Heron not guilty of both charges. The district court sentenced Felix to forty-six months' imprisonment, to be followed by two years of supervised release. This appeal followed.

## II.

■ Felix first argues that the district court erred in not giving her proposed instruction on assault by striking, beating, or wounding. Assault by striking, beating, or wounding, 18 U.S.C. § 113(d), is a lesser included offense of assault resulting in serious bodily injury, 18 U.S.C. § 113(f). *United States v. Young*, 875 F.2d 1357, 1359 (8th Cir.1989). Both offenses are general intent crimes; neither requires a specific intent to cause bodily harm. *United States v. Knife*, 592 F.2d 472, 482 (8th Cir.1979). The distinguishing factor between the two offenses is the degree of injury that results from the assault. Whereas section 113(d) requires no particular degree of severity in the injury, section 113(f) requires, by definition, that the assault result in serious bodily harm. *Id.*

■ A defendant is entitled to a lesser included offense instruction if:

(1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense;

and (5) there is mutuality, *i.e.*, a charge may be demanded by either the prosecution or the defense.

*United States v. One Star*, 979 F.2d 1319, 1321 (8th Cir.1992) (quoting *United States v. Thompson*, 492 F.2d 359, 362 (8th Cir.1974)).

■ The dispute in this case centers around the third requirement. The "some evidence" requirement is met if the jury could infer from the evidence presented that the defendant committed the lesser offense. *Id.* The jury is free to believe or to reject any witness's testimony in its entirety. The jury is free also to accept one or more witnesses's testimony only in part and thereby to create its own version of the facts. *Id.* Nevertheless, a "trial court need not give a lesser included offense instruction when there is no basis upon which the jury could rationally find the defendant innocent of the more serious count, but guilty of the lesser count." *Id.* (citing *United States v. Eagle Elk*, 658 F.2d 644, 649 (8th Cir.1981)).

Felix contends that under certain versions of the facts "some evidence" existed from which the jury could find that she had committed only assault by striking, beating, or wounding. Felix observes that some witnesses testified that they had seen her only punch Robert Black Feather. She contends that if the jury believed that she had only punched Black Feather (as opposed to having struck him with a club) and that her punch or punches did not cause serious bodily harm, it could have convicted her of the less serious assault.

■ We find Felix's argument unpersuasive, because it is based on the erroneous premises that the individuals in the group beating Black Feather were each committing separate assaults and that those assaults were of different types. The group attack on Robert Black Feather constituted only one assault, that being an assault resulting in serious bodily injury. Consequently, everyone who took part in the attack was guilty of that offense—either as a principal or as an aider and abetter to the offense. Everyone who delivered a blow or a kick encouraged and aided others in the crime; each person who struck or kicked Black Feather helped

incapacitate him so that others could deliver blows or kicks that collectively resulted in serious injury. Whether any intended to cause serious injury or to aid others in so doing is irrelevant. As already noted, assault resulting in serious bodily injury requires no specific intent to cause serious harm; it requires only that the act or acts constituting the assault result in serious injury. Accordingly, even if the jury believed that Felix had only punched Black Feather and that her blows did not by themselves actually result in serious injury, she is guilty of the more serious assault as an aider and abetter.

■ Felix also observes that some witnesses testified that she had yelled words of encouragement, such as "Get him," "Hit him again," and "Kill him." Felix herself admitted that she had yelled and screamed in anger after she was knocked down. Felix argues that if the jury believed that she had not delivered any blows to Black Feather but that she had encouraged the attack by yelling inciting comments, it could have found her guilty merely of assault by striking, beating, or wounding. More specifically, she contends that the jury might have found that her comments had encouraged those individuals around Black Feather who were committing the less serious assault but not those who were committing the more serious assault.

■ We find Felix's argument to be without merit for two reasons. First, as we have already said, none of the individuals involved in the attack were committing the less serious assault; they were all committing the more serious offense, either as principals or aiders and abetters. Felix's shouts must of necessity encouraged the commission of that more serious offense. Second, even assuming, *arguendo,* that some individuals were committing the lesser offense, no rational jury could have found that Felix's comments had encouraged those individuals committing the lesser offense but not those committing the more serious offense. Under the facts of this case, therefore there was no rational basis upon which the jury could have made such a distinction.

■ Felix raises one final argument for the lesser included offense instruction. She argues that the government presented evidence that she had hit Black Feather with a full beer can and that the jury could have found that throwing the can constituted assault by striking, beating, or wounding. We find her argument unpersuasive. Felix was not indicted or tried for throwing a beer can; rather, she was tried for her role in the beating. The government at no time contended that Felix was being tried for throwing a beer can or that throwing the can constituted an assault. Accordingly, Felix was not entitled to a lesser included offense instruction on the basis of conduct that was not part of the offense for which she was indicted and tried.

In short, we find that under no view of the evidence could a rational jury have found Felix innocent of assault resulting in serious bodily injury and guilty of assault by striking, beating, or wounding. Accordingly, the district court did not err in refusing to instruct the jury on the lesser included offense.

■ Felix next argues that the district erred in not declaring a mistrial on the ground that the jury verdict was coerced as a result of the district court's supplemental instruction to the jury that it should cease deliberating and resume deliberations on Monday. She speculates that upon receiving the instruction, the jury quickly reached a verdict in order to avoid having to return on Monday.

■ A criminal defendant "tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps,* 484 U.S. 231, 241, 108 S.Ct. 546, 552, 98 L.Ed.2d 568 (1988). In determining whether a jury was improperly coerced by a court's supplemental instruction, we examine the instruction "in its context and under all the circumstances." *Id.* at 237, 108 S.Ct. at 550 (quoting *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965) (per curiam)); *see also United States v. Hiland,* 909 F.2d 1114, 1138 (8th Cir.1990); *United States v. Brokemond,* 959 F.2d 206, 208 (11th Cir. 1992).

The court was faced with the alternatives of either instructing the jurors to continue deliberating into the evening and nighttime hours or permitting them to recess for the weekend. The former course of action, with or without the giving of an *Allen* charge, could well have been coercive, coming as it would have at the end of some eleven hours of deliberations. The course of action taken by the court was thus less inherently coercive than any other available to it. What prompted the jury to announce its verdict so quickly after receiving the court's response to its note we do not know. We have no way of knowing what discussions took place in the jury room during the time that the jury was awaiting that response. It would be pure speculation to conclude that the court's response triggered the verdict. Accordingly, we conclude that the court's instruction that the jury cease deliberating and that it return on Monday morning did not coerce the jury into reaching its verdict.

Likewise, the court's second supplemental instruction on Friday did not coerce the jury. When the jury returned on Monday to resume deliberating, it was free to deliberate for as long as it deemed necessary to reach a reasoned verdict.

The entire circumstances surrounding the supplemental instructions indicate that the jury reached its verdict upon due deliberation. As indicated above, the jury asked the court several questions about the case and the jury instructions during its eleven hours of deliberations. The jury returned three not guilty verdicts and one guilty verdict. In these circumstances, we find that the jury verdict was not improperly coerced.

The conviction is affirmed.