# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3281

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Ryland Craig Utlaut, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: April 12, 2007
Filed: August 15, 2007

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Ryland Craig Utlaut pled guilty to one count of mail fraud. See 18 U.S.C. § 1341. The district court[1] sentenced Utlaut to 63 months imprisonment and two years of supervised release. On appeal, Utlaut contends that the district court's failure to grant a downward departure based on diminished capacity was an incorrect and harmful application of section 5K2.13 of the Sentencing Guidelines. We affirm the sentence.

---

[1]The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

I.

Utlaut was employed by Garst Seed ("Garst"), a national seller of corn, bean, and alfalfa seed, from 1991 to 2004. Garst initially hired Utlaut as a district manager, and later promoted him to regional sales manager.

Beginning in 2001, Utlaut utilized his position at Garst and his knowledge of the seed business to conduct a "Ponzi" scheme.[2] Typically, Garst customers order their seed at the end of the calendar year for planting the following spring. Garst does not bill the customer until August, after harvest is completed. Garst offers a discount program for customers who pre-pay for seed prior to the planting season.

Under Utlaut's "Ponzi" scheme, he offered customers a greater "early-pay" discount through Agri-Management, an entity he created. Utlaut deposited checks made payable to Agri-Management into an account he controlled, and instead of using the money to pay for seed, Utlaut used the funds to support his gambling addiction. Utlaut would give the seed orders to Garst, but concealed his "early-pay" program from the company. Garst delivered the seed to the customers, and, unaware that the customers had "pre-paid," would bill the customers in August. Upon receiving the invoices from Garst, the customers would forward them to Utlaut, who paid with a check from Agri-Management. Utlaut obtained funds to pay the invoices from new seed orders and by soliciting direct investment in Agri-Management in exchange for the promise of a guaranteed return exceeding investment.

Utlaut's scheme collapsed in July 2004, when a customer contacted Garst regarding a large payment for seed that was not reflected on his invoice. After an

_____

[2]A "Ponzi" scheme is "[a] fraudulent investment scheme in which money . . . from the new investors is used directly to repay or pay interest to earlier investors, [usually] without any operation or revenue-producing activity other than the continual raising of new funds." Black's Law Dictionary 1198 (8th ed. 2004).

investigation, Garst discovered that Utlaut had deposited the money into his bank account, and Garst terminated Utlaut's employment. As a result of Utlaut's fraud, Garst's customers lost a total of $3,895,962.90, which was ultimately reimbursed by Garst.

On July 22, 2005, Utlaut entered a guilty plea to a one-count information charging him with mail fraud in violation of 18 U.S.C. § 1341. At sentencing, Utlaut presented evidence regarding his gambling addiction and argued for a downward departure pursuant to section 5K2.13,[3] which the district court denied. The district court sentenced Utlaut to 63 months imprisonment, a sentence at the low end of the 63 to 78 month advisory guideline range. Utlaut appeals.

II.

In a single issue, Utlaut contends that the district court misinterpreted the

---

[3]**§ 5K2.13 <u>Diminished Capacity</u> (Policy Statement)**
A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. . . .

**<u>Commentary</u>**
*<u>Application Note:</u>*
*1. For purposes of this policy statement—*
*"Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.*

<u>See</u> United States Sentencing Commission, <u>Guidelines Manual</u> § 5K2.13 (Nov. 2005).

Sentencing Guidelines by requiring Utlaut to provide testimony from a medical doctor to establish a section 5K2.13 departure. Utlaut contends that the district court's failure to depart because of the lack of evidence from a medical doctor, despite Utlaut's uncontroverted evidence demonstrating that he suffered from a compulsive disorder, was an incorrect and harmful application of section 5K2.13.

We review the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error. United States v. Vasquez-Garcia, 449 F.3d 870, 872 (8th Cir. 2006). Where a sentence is imposed as a result of an incorrect application of the Sentencing Guidelines and such error is not harmless, the case must be remanded. United States v. Fleck, 413 F.3d 883, 893-94 (8th Cir. 2005). However, "[a] district court's refusal to grant a downward departure is generally unreviewable on appeal, unless the district court had an unconstitutional motive or erroneously believed that it was without authority to grant the departure." See United States v. Goldsmith, 486 F.3d 404, 407 (8th Cir. 2007) (quoting United States v. Dabney, 367 F.3d 1040, 1044 (8th Cir. 2004)).

At the sentencing hearing, the district court considered the diminished capacity departure but denied it, finding Utlaut had not satisfied the requirements of section 5K2.13. Although the district court stated at one point, "there's no dispute in this record that he's a pathological gambler. Everybody in the courtroom agrees with that," the district court could not find, based on the record before it, that Utlaut's gambling addiction impaired his ability to understand the wrongfulness of the offense, exercise reason, or control his destructive behavior, and that his impairment contributed substantially to his embezzlement of company funds. See United States Sentencing Commission, Guidelines Manual § 5K2.13 (Nov. 2005).

The district court found that Utlaut's two pieces of evidence did not sufficiently show or explain the required link between Utlaut's addiction and his embezzlement. Utlaut's treatment records from The Meadows, an inpatient gambling treatment

facility, did not sufficiently analyze or discuss the link, and an affidavit from Ms. Culle Vandergarde, a licensed clinical social worker and addictions counselor who provided treatment to Utlaut following his discharge from The Meadows, lacked the required analysis and was conclusory.

The district court unsuccessfully sought from Utlaut an explanation of, and supporting evidence for, the required link between Utlaut's addiction and his embezzlement. On appeal, Utlaut misconstrues the district court's efforts as a requirement that he provide testimony from a medical doctor to establish a section 5K2.13 departure. Contrary to Utlaut's contention that the district court erroneously limited the evidence it would consider, the district court gave Utlaut ample opportunity to supply relevant evidence to prove the required link.

In sum, the district court considered the downward departure and denied it because Utlaut failed to substantiate his claim of diminished capacity. Accordingly, we will not review the district court's refusal to grant the departure on appeal. See Goldsmith, 486 F.3d at 407; United States v. Gonzalez-Ramirez, 350 F.3d 731, 734 (8th Cir. 2003) ("[T]he district court specifically acknowledged its authority to depart, but denied the motion based on Gonzalez-Ramirez's failure to substantiate his claim of diminished capacity. . . . Thus, we affirm the district court's discretionary denial of the § 5K2.13 motion.").

III.

Accordingly, we affirm the sentence.

_____