# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1073

_____

United States of America,

      Appellee,

  v.

Kelly James Maxwell,

      Appellant.

_____

No. 11-1074

_____

United States of America,

      Appellee,

  v.

Natalie Renee Delores Ann Smith,

      Appellant.

Appeals from the United States
District Court for the
District of Minnesota.

_____

Submitted: November 16, 2011
Filed: December 22, 2011

_____

Before WOLLMAN, MURPHY, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Kelly Maxwell and Natalie Smith each pled guilty to second degree murder committed on the Red Lake Indian Reservation in Northern Minnesota. Each received a sentencing guideline range of 168–210 months, but Smith was credited with providing substantial assistance to the government and received a downward departure. The district court[1] sentenced Smith to 121 months and varied upward in sentencing Maxwell to 222 months. Both defendants appeal their sentences. We affirm.

I.

In October 2009 Red Lake tribal police were called to investigate a report of a dead body in the village of Redby, where they found the nude body of Curtis May under a pile of logs. Examination of the body revealed that May had sustained trauma to his face, head, pelvic area, and genitals. Since May's clothes were discovered in front of Natalie Smith's nearby residence, the police focused their investigation on her and her boyfriend, Kelly Maxwell. Both belonged to the Red Lake Band of Chippewa Indians, as did May.

After Smith and Maxwell were taken into custody, Smith informed the Red Lake officers that she and Maxwell had "stomped" May. Smith revealed that the blood on her shoes was from kicking May, and she directed police to a nearby ditch where they discovered the boots Maxwell had worn during the offense. A search of Smith's home revealed bloody clothing which she and Maxwell had attempted to clean.

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

During their investigation police were told that May showed up intoxicated at Smith's residence on the night of the murder. Smith and Maxwell had also been drinking that evening. Maxwell claims that he attacked May because he thought he was about to rape Smith. He admitted he chased, punched, and kicked May in the face and genitals, then dragged him outside and piled logs on top of him. Smith admitted that she also kicked May and aided Maxwell with the killing. Both Maxwell and Smith admit they left May nude and exposed to the elements following the attack. The temperature was close to forty degrees at the time police found the body.

Maxwell and Smith were each charged in January 2010 with one count of second degree murder in violation of 18 U.S.C. §§ 2, 1111, 1151, and 1153(a). Smith pled guilty to this charge. Her plea agreement included a recommended guideline range of 168–210 months. It provided for a five level reduction in her offense level if she cooperated, resulting in a guideline range of 97–121 months. Because the plea agreement was made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the district court was bound to sentence Smith to no more than 121 months once it accepted her plea.

Five days after Smith pled guilty, Maxwell pled to the same charge but without the same type of agreement with the government. His agreement recommended a guideline range of 168–210 months but left the sentence to the district court's discretion. It also provided that neither party could withdraw from the agreement if the district court determined a different guideline range.

The district court sentenced Maxwell first. During the sentencing hearing, Maxwell's attorney emphasized a report from a prison psychiatrist that his client suffered from mental illness and chemical dependency and had the intellectual ability of an elementary school student. His attorney also focused on Maxwell's claim that on the night of the murder he had originally evicted May from Smith's house, but thereafter May returned and attempted to rape Smith. The government argued that

-3-

Maxwell's criminal history category did not reflect his true history because he had committed many uncounted tribal violations, several for domestic abuse. The prosecution also highlighted the brutal nature of the crime and contrasted Maxwell's behavior with Smith's, contending that she had cooperated with the investigation and expressed remorse for the crime while Maxwell had tried to place blame on the victim.

The district court sentenced Maxwell to 222 months, twelve months above the top of his guideline range. It focused on the brutality of the crime, explaining that given all the circumstances an upward variance was appropriate, or alternatively an upward departure under U.S.S.G. § 5K2.8 for conduct that was "unusually heinous, cruel, brutal, or degrading to the victim." The sentencing court concluded that "[i]f there had been no mental disability at all . . . I would be looking . . . [at] closer to 280 to 300 months."

The district court sentenced Smith the following day. The court granted the government's motion for a downward departure for substantial assistance under U.S.S.G. § 5K1.1. Smith's attorney argued for a sentence of 48 months, focusing on the abuse Smith had suffered as a child, her numerous suicide attempts, and her below average cognitive skills. Her attorney also moved for a downward departure for duress, contending that Smith felt coerced by Maxwell on the night of the murder as a result of his history of abusing her. See U.S.S.G. § 5K2.12. The government highlighted Smith's expression of remorse for the killing and her willingness to assist the authorities. The district court imposed a sentence of 121 months, noting that it "decline[d] to give any mitigation under either the advisory guidelines or as a variance under § 3553(a) . . . . [T]he only basis to go from anything below 168 is the cooperation."

Both Maxwell and Smith appeal their sentences.

-4-

II.

Maxwell first contends that the district court erred by varying upward in his sentence but not doing so in Smith's. He argues that the difference in sentences is not supported by the record and that his sentence violated both § 3553(a) in that it was "greater than necessary" and § 3553(a)(6) in that it created "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

In reviewing a sentence, we "first ensure that the district court committed no significant procedural error." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). In the absence of procedural error, we then "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. (quoting Gall, 552 U.S. at 51). A district court abuses its discretion when it "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." Id. (internal quotations and citation omitted). Because Maxwell alleges no procedural error, we "bypass the first part of our review and move directly to review the substantive reasonableness of his sentence." United States v. O'Connor, 567 F.3d 395, 397 (8th Cir. 2009).

The government asserts that the 101 month disparity between the two sentences is explained by Smith's cooperation in the difficult investigation in this case. Her assistance was particularly important because there were no other eyewitnesses available. She received a downward departure of five offense levels because of her cooperation, leading to a guideline range of 97–121 months, in contrast to Maxwell's guideline range of 168–210 months. Maxwell contends that the district court erred by not varying upward in her case after departing downward for her cooperation. He

asserts that the district court must have erroneously determined that his conduct was more egregious than Smith's.

The district court's careful consideration of the record indicates that it did not abuse its discretion in varying upward in Maxwell's case but not in Smith's. At Maxwell's sentencing, the district court recognized that both he and Smith had experienced difficult upbringings and family lives which would be considered in sentencing. The court thus made clear that it was looking into their respective backgrounds. Maxwell's relevant background included a history of violence toward women, including Smith. The record indicated that Maxwell and Smith had first met ten years before, when she was 13 and he was 17, and that he had previously assaulted her while intoxicated. The district court found that Smith's actions were in part motivated by fear of Maxwell in his drunken state on the evening of the killing. The government pointed out that Smith had immediately expressed regret for the crime, in contrast to Maxwell who remained defiant. Reference was also made to Maxwell's numerous tribal violations not included in his criminal history calculation. Smith had no such violations.

Maxwell focuses on the offense conduct section of his presentence investigation report (PSR) to argue that each defendant was equally guilty, but this section in fact reveals significant distinctions between the defendants. It indicates that Maxwell had admitted to "chasing, punching, and kicking the victim in the face as well as in the genitals," and to "dragging the victim and piling logs on top of him." Smith admitted to guilt for "kicking the victim and aiding Maxwell," for not seeking help, and for attempting to clean their clothing following the crime. The district court noted that Maxwell had admitted to chasing the victim and characterized the fatal assault as "an extremely serious, cruel, brutal, degrading way to die." Sentencing disparities are not unwarranted when there are legitimate distinctions between codefendants. United States v. Jones, 612 F.3d 1040, 1045 (8th Cir. 2010). We conclude that the district

court did not abuse its discretion in sentencing Maxwell and Smith differently because the record reveals legitimate distinctions between them.

We also reject Maxwell's contention that the district court abused its discretion by refusing to depart or vary downward due to his mental illness and intellectual disabilities. At sentencing the district court engaged in an extensive discussion of these issues with Maxwell's attorneys. It also noted that a psychiatric evaluation concluded that Maxwell had "understood the wrongfulness of his actions and he would have had the intellectual level to control his actions should he choose to do so." In imposing his sentence the district court concluded that "if there had been no mental disability at all . . . I would be closer to 280 to 300 months this morning, not the 222 where I ended up under all of the circumstances." We conclude that the district court did not abuse its discretion by declining to reduce Maxwell's sentence further due to his mental illness.

## III.

Smith argues that the district court erred procedurally by failing to consider her request for a downward departure due to duress and refusing to apply all the § 3553(a) factors. She also attacks her sentence as substantively unreasonable. The parties agree that because Smith failed to object to the alleged procedural errors at sentencing, our review of those claims is for plain error. United States v. Starfield, 563 F.3d 673, 674 (8th Cir. 2009). To prevail on plain error review, Smith must show "(1) an error; (2) that is plain; and (3) that affects substantial rights." Id. (citation omitted). "An error affects a substantial right if it is prejudicial," meaning that "there is a reasonable probability the defendant would have received a lighter sentence but for the error." United States v. Mireles, 617 F.3d 1009, 1013 (8th Cir. 2010) (citations omitted). This court will correct such an error "only if it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Starfield, 563 F.3d at 674–75 (citation omitted) (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)).

Smith first contends that the district court failed to give proper consideration to her request for a downward departure under U.S.S.G. § 5K2.12 for "serious coercion, blackmail, or duress," based on her fear of Maxwell. She concedes that normally a district court's decision to deny a request for a downward departure is unreviewable, see United States v. Utlaut, 497 F.3d 843, 845 (8th Cir. 2007), but contends that her claim is reviewable because the district court failed to give consideration to her request.

Smith relies on cases suggesting that a district court errs if it fails explicitly to consider a potential departure under the guidelines. See United States v. Maurstad, 454 F.3d 787, 790 (8th Cir. 2006). Maurstad differed significantly from the present case, however, because the district court imposed an above guideline sentence there and failed to explain whether the adjustment was the result of an upward departure or a variance. Id. In Smith's case in contrast, the district court imposed a guideline sentence after considering her request for a downward departure. The district court acknowledged Smith's fear of Maxwell explaining, "I accept for the most part there was an element of fear because Mr. Maxwell . . . has a long history of controlling . . . and assaulting people, especially younger women." The court also stated "I don't entirely accept that each and every thing that was done that evening was done out of fear of Mr. Maxwell," and explained "I decline to give any mitigation under either the advisory guidelines or as a variance under 3553(a)." It concluded by stating that "[t]o the extent I have been asked . . . to reduce [the sentence] . . . because of duress . . ., that plays no role in the sentence." This record thus made it clear that the district court considered Smith's requested departure and rejected it. Even if we were to assume that the district court erred by not explicitly referencing U.S.S.G. § 5K2.12, Smith cannot show a "reasonable probability" that she would have received a lower sentence but for the alleged error. Mireles, 617 F.3d at 1013.

Smith next argues that the district court erred by failing to apply the § 3553(a) factors to her case. She urges that the district court's statement that "duress issues or

mental health issues, or all of the sadness that Ms. Smith you had in your life, that plays no role in the sentence" indicates that the district court procedurally erred by refusing to consider the "nature and circumstances of the offense and history and characteristics of the defendant" as required by § 3553(a)(1).

Contrary to Smith's assertions, we conclude that the district court gave careful attention to the requirements of § 3553(a)(1). The district court acknowledged the "abuse that you were subjected to, the countless and unspeakable number of placements and foster homes . . . the 8 or 9 failed treatment attempts . . . . [It] is a very sad story." It further explained "I don't believe that your mental health status played a role, especially with the voluntary use of alcohol on that particular day," and "no one questions the suicide attempts. . . . I will deal with [them] as part of any prison sentence." As discussed above, the district court also addressed Smith's duress claim. The sentencing transcript makes clear that the district court in fact considered the § 3553(a) factors.

Smith also argues that her sentence is substantively unreasonable, which we review for an abuse of discretion. See Feemster, 572 F.3d at 461. She asserts that the district court gave too much weight to the guidelines and failed to give adequate attention to mitigating factors. Because Smith received a sentence within the applicable guideline range, her sentence is presumed reasonable. United States v. Clay, 622 F.3d 892, 895 (8th Cir. 2010). The district court considered the mitigating circumstances regarding Smith's background, mental illness, and duress. It also considered other § 3553(a) factors, including the seriousness of the crime and need for general deterrence. "The district court has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." United States v. Bridges, 569 F.3d 374, 379 (8th Cir. 2009). We conclude that the district court did not abuse its discretion in imposing a 121 month sentence.

## IV.

Accordingly, we affirm the judgment of the district court.

_____