LOKEN, Circuit Judge.
After a lengthy trial, a[1] jury convicted Gordon Lasley, Jr., of the second-degree murder of his parents in Indian country. See 18 U.S.C. §§ 1111, 1153. The district court[1] imposed two consecutive life sentences, the top of Lasley’s advisory guidelines sentencing range. Lasley appeals his conviction and sentence, arguing the court erred by refusing to instruct on the lesser-included offense of involuntary manslaughter, and by imposing a substantively unreasonable sentence. We affirm.
*912 I. Background
The facts relevant to the issues on appeal are undisputed. At the time of the murders, Lasley was twenty-five years old, living in the basement of his parents’ home in the Iowa Meskwaki Settlement. His girlfriend, Antonia, and their three children lived apart from Lasley, but all five gathered at the parents’ home on the evening of February 5, 2014. Antonia and Lasley smoked marijuana in the basement; Lasley’s parents remained upstairs. Around 8:30 p.m., Antonia left with two of the children, leaving one daughter behind. Antonia testified that, when she left, Las-ley seemed “happy” and “was listening to pow-wow music and dancing.”
At some point during the next hour, Lasley went upstairs and killed his parents, using a three-foot-long machete. He first killed his father by striking him three times with the machete, inflicting major wounds. Crime scene evidence indicated his father struggled and tried to flee. Las-ley then turned on his mother, who saw him kill his father. Lasley chased her through the house, striking her with the machete at least six times in the head, neck, and chest. Both parents bled to death. In the next hour, Lasley had several rambling phone conversations with Antonia, saying, among other things: “Are you afraid to die?”; “Just go to the light”; “I killed my mom and dad”; “We’re free. We’re saved”; and “My mom and dad raised me wrong. The white man’s religion is wrong.” He also said he told his parents there were sexually transmitted diseases on the settlement, and his father responded, “it was right here.” Lasley then drove to his brother’s home and told him, “I’m sorry. I’m sorry. ... I killed mom and dad.”
Lasley was tried on two counts of first-degree murder. His primary defense was not guilty by reason of insanity. Two defense experts offered different theories of insanity. One testified that Lasley suffered from paranoid schizophrenia, distorting his perception of reality. The other testified that' Lasley’s insanity stemmed from a delusional disorder and a psychotic episode on the night of the murders; he opined that Lasley was under the delusion that his parents had put “bad medicine” on him, causing him to have a sexually transmitted disease, and the only way to remove the bad medicine was to kill his parents. In rebuttal, a government expert testified that Lasley was sane at the time of the murders and that his belief in bad medicine was a shared cultural belief, not a delusion. The government also called lay witnesses who testified to Native American culture and Lasley’s mental health.
II. The Jury Instruction Issue
Prior to trial, Lasley submitted proposed jury instructions on the lesser-included offense of involuntary manslaughter. At the close of the evidence, after an off-the-record discussion with counsel, the court declined to give involuntary manslaughter instructions. During closing argument, defense counsel reviewed the conflicting expert testimony in detail and urged the jury to find Lasley not guilty by reason of insanity of all first and second degree murder charges. The jury rejected the insanity defense, found Lasley guilty of the second-degree murder of both parents, and acquitted him of first-degree murder.
On appeal, Lasley argues the district court erred in refusing to instruct the jury on the offense of involuntary manslaughter. Involuntary manslaughter is a lesser-included offense of murder. United States v. One Star, 979 F.2d 1319, 1321 (8th Cir. 1992). A defendant is entitled to a properly requested lesser-included offense instruction “if the. evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the great *913 er.” Keeble v. United States, 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). We review the district court’s decision not to instruct on involuntary manslaughter for abuse of discretion. See United States v. Martin, 777 F.3d 984, 997 (8th Cir.), cert. denied, — U.S. -, 135 S.Ct. 1882, 191 L.Ed.2d 753 (2015).
Involuntary manslaughter is “the unlawful killing of a human being without malice ... [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.” 18 U.S.C. § 1112(a). When Lasley repeatedly slashed his parents with a three-foot-long machete, he committed the felony of assault with a dangerous weapon. See 18 U.S.C. § 113(a)(3). He made no claim that he accidentally stabbed his parents. On this evi-dentiary record, a rational jury could not have acquitted Lasley of first- and second-degree murder and convicted him of involuntary manslaughter. See United States v. Elk, 658 F.2d 644, 649-50 (8th Cir. 1981); United States v. Lincoln, 630 F.2d 1313, 1320 (8th Cir. 1980); United States v. Wallette, 580 F.2d 335, 338-39 (8th Cir. 1978).
“The requisite mental state for involuntary manslaughter is ‘gross’ or ‘criminal’ negligence ... short of the extreme recklessness, or malice required for murder.” One Star, 979 F.2d at 1321. Lasley argues the jury could have found that he acted without the malice aforethought that is an element of murder, see 18 U.S.C. § 1111(a), because, while not legally insane, “he suffered from a significant mental impairment at the time of the killings.” He cites no supporting authority for this theory, and it is unsound as a matter of law. The Insanity Defense Reform Act of 1984, codified at 18 U.S.C. § 17(a), provides that insanity is an affirmative defense to any federal prosecution, but “[m]ental disease or defect does not otherwise constitute a defense.” This statute as uniformly construed precludes a diminished capacity defense to : general intent crimes such as second-degree murder and voluntary manslaughter. See United States v. Frank, 472 Fed.Appx. 431, 432 (9th Cir. 2012); United States v. Pohlot, 827 F.2d 889, 907 (3d Cir. 1987), cert. denied, 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988); see generally Clark v. Arizona, 548 U.S. 735, 126 S.Ct. 2709, 165 L.Ed.2d 842 (2006). Thus, the district court did not abuse its discretion in refusing to instruct the jury on involuntary manslaughter.
III. The Sentencing Issue
At sentencing, the district court determined that Lasley’s advisory guidelines sentencing range was 360 months to life in prison. After considering the 18 U.S.C. § 3553(a) sentencing factors, the court determined that consecutive life sentences for each murder was “sufficient but not greater than necessary to achieve the goals of sentencing.” Lasley argues the court imposed a substantively unreasonable sentence. We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. United States v. Boneshirt, 662 F.3d 509, 517 (8th Cir. 2011), cert. denied, — U.S. -, 132 S.Ct. 1613, 182 L.Ed.2d 217 (2012).
The district court articulated many reasons for imposing a life sentence. First, the court noted that a life sentence was within the guidelines range had Lasley murdered one parent. But he murdered both parents, and the court found, by a preponderance of the evidence, that the killings were premeditated murder. Second, the court explained that Lasley “brutally murdered” his fleeing parents in view of his young daughter, and there was “no evidence of any provocation that would cause a reasonable person to murder these parents.” Third, consistent with past decisions, the *914 court viewed Lasley’s criminal history— twenty-six convictions by age twenty-six— as evidence of his disrespect for authority. See United States v. Walking Eagle, 553 F.3d 654, 657-58 (8th Cir.2009). Fourth, the court concluded that Lasley “poses a substantial risk to the public safety” given his anger and past violence, which included assault convictions, repeated abuse of his girlfriend, and the slaying of his parents. The court explicitly considered mitigating factors — Lasley’s mental health, substance abuse, employment, and family life — as well as the need to avoid unwarranted sentencing disparity. After weighing these factors, the court determined that a life sentence was appropriate.
On appeal, Lasley argues the sentence is substantively unreasonable because “it was heavily based on a finding of premeditation and deliberation that was rejected by the jury and not sufficiently established one way or the other to justify the weight accorded it.” Because a jury’s acquittal establishes only that the government failed to prove an essential element of an offense beyond a reasonable doubt, it is well settled that “a sentencing court may consider the conduct underlying an acquitted charge so long as that conduct has been proved by a preponderance of the evidence.” Martin, 777 F.3d at 997 (quotation omitted); see United States v. Watts, 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); United States v. Stroud, 673 F.3d 854, 862-63 (8th Cir.2012), cert. denied, — U.S. -, 133 S.Ct. 1581, 185 L.Ed.2d 583 (2013). Here, Lasley argues the evidence “simply did not preponderate ... on the issue of premeditation.” The district court disagreed: .
Perhaps there’s an argument that the murder of Gordon Lasley Sr. was not premeditated, but when you think of the trial evidence and the way he was attacked from behind and the number of blows and the evidence suggests that he was trying to escape ... to the front door, I think Murder in the First Degree was established by the evidence. Not found by the jury, but established by a preponderance of the evidence in my mind.
Clearly, the murder of Kim Lasley was premeditated. She watched the defendant attack her husband with the machete. She saw him collapse, and as he bled to death ... the defendant turned on her, and the defendant even remarked after the incident that his mother just stood there and she didn’t do anything; she didn’t call the police. Rather, she ran down the stairs, was likely attacked on the stairs, and there is indication that she was struggling, hoping to get out the basement door.
Having reviewed the trial record, we conclude that these findings of premeditated murder were not clearly erroneous.
Lasley further argues that it was substantively unreasonable “to impose a sentence substantially based on” the district court’s disagreement with the jury’s .first-degree murder verdict. That argument overstates the legal effect of an acquittal. But in any event, the district court identified numerous factors that together justified a life sentence, and we have repeatedly held that a “district court has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence.” United States v. Maxwell, 664 F.3d 240, 247 (8th Cir.2011) (quotation omitted). Moreover, a life sentence on each count was within the advisory guidelines range and is therefore presumptively reasonable on appeal. See Boneshirt, 662 F.3d at 517.
It is “the unusual case when we reverse a district court sentence — whether within, above, or below the applicable Guidelines range — as substantively unrea *915 sonable.” United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (quotation omitted). Given the district court’s thorough consideration of the § 3553(a) factors, we conclude the court did not abuse its substantial sentencing discretion in imposing an admittedly harsh within-guidelines sentence. See Boneshirt, 662 F.3d at 520.
The judgement of the district court is affirmed.

. The Honorable Linda R. Reade, Chief Judge of the United States District Court for the Northern District of Iowa.