# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1839
_____

United States of America

*Plaintiff - Appellee*

v.

David Paul Wood

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau
_____

Submitted: February 14, 2022
Filed: August 2, 2022
[Unpublished]
_____

Before SMITH, Chief Judge, BENTON and KELLY, Circuit Judges.
_____

PER CURIAM.

David Wood was convicted by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court[1]

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

imposed two sentencing enhancements: (1) a two-level increase to his base offense level because the offense involved a semi-automatic firearm capable of accepting a large capacity magazine, and (2) another two-level increase because the offense involved a stolen firearm. On appeal, Wood does not challenge his conviction but contends that the court erred in imposing the sentencing enhancements. We affirm.

## I. *Background*

On September 17, 2019, law enforcement officers identified David Wood as a suspect in their investigation of an armed robbery that had occurred that day in Marston, Missouri. The following day, officers tracked down Wood's vehicle and pulled him over. A search of the car yielded a number of items, including two empty gun holsters, a pair of black gloves, a black ball cap, a black neoprene mask, a plastic skull mask, and Wood's cell phone.

Police took Wood to police headquarters where he agreed to sit for an interview. With Wood's consent, investigators searched his cell phone. The search revealed several photographs of two firearms, an FN 9mm semiautomatic pistol and a Springfield .40 caliber semiautomatic pistol. The first photograph depicted both firearms as well as an extended high-capacity magazine lying next to the 9mm pistol. A second photograph featured the 9mm pistol by itself with a distinctive carpet visible in the background. A third photograph featured the .40 caliber pistol by itself with the same distinctive carpet in the background. Three other photographs showed a man wearing a plastic skull mask, which appeared to be the same mask that police had recovered from Wood's vehicle. In two of these photographs, the masked man can be seen holding the .40 caliber pistol.

When questioned about the photographs found on his cell phone, Wood admitted that he was the person wearing the skull mask. Wood claimed, however, that the object he was holding in the pictures was not an actual firearm, but an airsoft gun.

Investigators subsequently obtained a search warrant for Wood's Facebook account. Several messages were discovered where Wood specifically discussed firearms. In one exchange from August 15, 2019, Wood sent an individual a photograph of the .40 caliber pistol with the message "check this out." R. Doc. 91, at 132. That same day, Wood told the same individual that he "need[ed] a holster." *Id.* at 135. Two weeks later, Wood sent a photograph of the .40 caliber pistol to another individual, specifically referring to it as a ".40." *Id.* at 138.

Federal law prohibited Wood from possessing firearms because he had five previous felony convictions. On November 5, 2019, he was indicted on one count of being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1). Wood pleaded not guilty and elected to proceed to trial.

Among the government's witnesses was George Dawson, a friend of Wood. Dawson testified that Wood stayed at his apartment in New Madrid, Missouri "from time to time," including around the time of the robbery. R. Doc. 91, at 192. Dawson also testified that the 9mm pistol depicted in Wood's cell phone photos belonged to Dawson and that he had purchased it himself from a licensed firearms seller.[2] He confirmed that the photograph of the 9mm pistol was taken inside his apartment because he recognized the distinctive carpet in the background. He also told the jury that he did not take the photograph and was not present when it was taken.

In addition to his testimony about the 9mm pistol, Dawson testified that he had seen the .40 caliber pistol on one prior occasion: Wood came to his apartment with a woman named Amber Rogers who had stolen the firearm from her boyfriend and

---

[2]Dawson was unable to produce the 9mm pistol at trial, however, as he had sold it to Kenny Steele of Poplar Bluff, Missouri, subsequent to the pictures being taken and prior to trial. Police met with Steele on October 30, 2019, at which time they identified the 9mm pistol as the firearm previously belonging to Dawson. Subsequent to this meeting, the firearm was reported stolen and has not been recovered.

was attempting to sell it. Dawson testified that, while he declined to purchase it, the .40 caliber pistol was in fact a real firearm. Dawson is an ex-Marine and is familiar with guns. He also confirmed that this was the same gun in the photograph Wood had sent in the August 15, 2019 Facebook message and in the cell phone photo showing the .40 caliber pistol by itself. Dawson further confirmed that he could tell that the latter photograph was taken inside his apartment based on the distinctive carpet in the background.

The jury also heard testimony from Edward O'Guin, another friend of Wood. O'Guin told the jury that Wood occasionally stayed at his house in New Madrid County. O'Guin also testified that Wood had an old Ford truck that Wood was keeping on O'Guin's property around the time of the robbery. The truck had no motor; Wood used it only for storage. Shortly after the robbery, O'Guin allowed law enforcement to search the truck, and they recovered a box of .40 caliber ammunition. While on the stand, O'Guin was shown the three photographs depicting Wood wearing the mask. Although he was not present when they were taken, O'Guin confirmed that these photographs were taken in his living room.

Additionally, Wood's cell phone metadata corroborated the testimony of Dawson and O'Guin that the six photographs were taken at their respective residences. The metadata also revealed the dates and times the photographs were created. The first three photographs, which depicted both firearms inside Dawson's apartment, were taken on September 2, 2019, at around 10:00 p.m. The last three photographs, which depicted Wood wearing a skull mask, were taken at O'Guin's house on September 16, 2019, at approximately 2:16 a.m., about 24 hours before the robbery took place.

Testifying as a witness for the government, Special Agent (SA) John Taylor of the Bureau of Alcohol, Tobacco, Firearms, and Explosives examined the photographs of the .40 caliber pistol and concluded that the photo depicted a real firearm. SA

Taylor also conducted a trace on the 9mm pistol and verified that Dawson purchased it from a federally licensed firearms dealer in February 2019.

The court held a jury instructions conference. No objections were raised by either party to any of the instructions. The second element in the verdict-directing instruction provided that the jury had to find that Wood "knowingly possessed a firearm, that is an FN, 9mm caliber pistol, or a Springfield, .40 caliber pistol" to find him guilty. R. Doc. 56, at 7. The jury returned a guilty verdict but did not indicate whether it had found that Wood had possessed the 9mm pistol, the .40 caliber pistol, or both. The court accepted the verdict and ordered the United States Probation Office to prepare a presentence investigation report (PSR) in advance of the sentencing hearing.

The PSR included a summary of the evidence presented at trial, an outline of Wood's criminal history, and calculations of the advisory Sentencing Guidelines range. It determined that Wood's base offense level was 26. This calculation was based on Wood's two prior drug-trafficking convictions and that the instant offense involved a semi-automatic firearm capable of accepting a large capacity magazine (the 9mm pistol), pursuant to U.S.S.G. § 2K2.1(a)(1). Two levels were then added pursuant to U.S.S.G. § 2K2.1(b)(4)(A) because the .40 caliber pistol was stolen. Wood's total offense level therefore became 28. The PSR further reflected that Wood had five felony convictions (including two federal convictions) and eight misdemeanor convictions, resulting in a total of 18 criminal history points, which correlated with a criminal history category of VI. A total offense level of 28 and a criminal history category of VI would normally result in a Guidelines range of 140–175 months' imprisonment, but, as the statutory maximum term of imprisonment was 10 years, the Guidelines term became 120 months' imprisonment.

Wood filed an objection to the PSR maintaining his innocence and objecting to all the offense conduct outlined in the PSR. Additionally, he specifically

challenged the application of two sentencing enhancements: (1) the two-level increase to his base offense level under U.S.S.G. § 2K2.1(a)(1) because the offense involved a semi-automatic pistol capable of accepting a large capacity magazine; and (2) the two-level stolen-firearm enhancement under U.S.S.G. § 2K2.1(b)(4)(A). Wood argued that, because the verdict-directing instruction allowed the jury to convict him of possessing either the 9mm pistol or the .40 caliber pistol, it was possible that the jury could have acquitted him of possessing one of those firearms. According to Wood, imposition of both enhancements required finding that he possessed both firearms. He averred that the possibility that the jury may not have found him guilty beyond a reasonable doubt of possessing one of the firearms precluded the application of both challenged enhancements. Wood acknowledged, however, that even if both of his objections were sustained, the advisory Guidelines range would be 100–120 months.

At the sentencing hearing on April 1, 2021, the court overruled Wood's broad objection to the factual statements related to his offense conduct, finding the verdict well-supported by the evidence. Addressing Wood's challenge to the two-level increase for possessing a firearm capable of accepting a large capacity magazine, the government directed the court's attention to the photograph in government exhibit 14, which depicted a large capacity magazine lying next to the 9mm pistol. The government then announced that it had additional documentation to establish that this particular pistol was indeed capable of accepting 24-round magazines. Before the government introduced its further documentation, however, Wood informed the court that he was not contesting the 9mm pistol's capability of accepting a large capacity magazine. Wood clarified that his objection challenged whether there was sufficient evidence that he possessed the 9mm pistol at all, arguing that it was possible that the jury could have found him guilty only of possessing the .40 caliber pistol (which was not capable of accepting a large capacity magazine) while acquitting him of possessing the 9mm pistol.

-6-

As to the stolen-firearm enhancement, the government drew the court's attention to Dawson's trial testimony wherein he stated that Rogers had come to his apartment along with Wood attempting to sell Dawson the .40 caliber pistol that she had stolen from her boyfriend. The court ultimately overruled Wood's objections based on this testimony. The court thus found by a preponderance of the evidence that he had possessed both firearms. The court then formally adopted all of the factual statements and Guidelines calculations set forth in the PSR.

After hearing sentencing recommendations from the parties and balancing the statutory sentencing factors, the court ultimately imposed a sentence of 120 months' imprisonment running concurrently with any other sentences pending against Wood, to be followed by a 3-year term of supervised release.

## II. *Discussion*

We review a district court's interpretation and application of the Sentencing Guidelines de novo and its related factual findings for clear error. *United States v. Mathews*, 784 F.3d 1232, 1236 (8th Cir. 2015); *see also United States v. Anderson*, 926 F.3d 954, 957 (8th Cir. 2019). Facts that provide the basis for a sentencing enhancement must be proven by a preponderance of the evidence. *United States v. Sacus*, 784 F.3d 1214, 1219 (8th Cir. 2015). Reversal based on factual findings is appropriate only when the court of appeals has a "definite and firm conviction that a mistake has been made." *United States v. Two Elk*, 536 F.3d 890, 909 (8th Cir. 2008) (internal quotation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Waller*, 689 F.3d 947, 959 (8th Cir. 2012) (per curiam) (internal quotation omitted). Factual findings that "are plausible in light of the record viewed in its entirety . . . must be affirmed, regardless of how [the court of appeals] might have weighed the evidence in the first instance." *Id*. (internal quotation omitted). Nor can a factual finding be clearly erroneous when "supported by substantial evidence." *Id*. (internal quotation omitted).

The court's instructions to the jury stated that, to render a guilty verdict, the jury had to find that Wood "knowingly possessed a firearm, that is an FN, 9mm caliber pistol, or a Springfield, .40 caliber pistol." R. Doc. 56, at 7. The jury's guilty verdict did not specify whether it found that he possessed the 9mm pistol, the .40 caliber pistol, or both. On this basis, Wood argues that it is possible the jury could have found that he possessed one of the pistols but not the other; because of this possibility, he argues, the two challenged sentencing enhancements were improperly applied.

Wood's argument raises two related questions: first, whether it was appropriate for the sentencing court to consider Wood's possible possession of both guns without an affirmative indication from the jury that it had found him guilty of possessing both guns; and second, whether the court properly found that the two sentencing enhancements applied.[3]

Sentencing courts may consider offense conduct underlying uncharged, dismissed, or acquitted conduct, "so long as that conduct has been proved by a preponderance of evidence." *United States v. Ruelas-Carbajal*, 933 F.3d 928, 930

---

[3]Wood does not challenge his sentence under *Alleyne v. United States*, 570 U.S. 99 (2013), and its progeny. In *Alleyne*, the United States Supreme Court held that, under the Fifth and Sixth Amendments, "any fact that increases the mandatory minimum is an 'element'[of the crime] that must be submitted to the jury." *Id.* at 103. Nonetheless, it is worth noting that the sentencing enhancement for the firearm's capability "of accepting a large capacity magazine . . . did not increase the statutory minimum . . . punishment, and it was thus not an element of the violation under 18 U.S.C. § 922(g)(1)." *United States v. Reid*, 827 F.3d 797, 801 (8th Cir. 2016) (citing *Alleyne*, 570 U.S. 99 (2013)). The same is true of the stolen-firearm enhancement. Hence, the district court's imposition of these enhancements at sentencing did not run afoul of *Alleyne*.

(8th Cir. 2019) (quoting *United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam)); *see also United States v. Griggs*, 71 F.3d 276, 281 (8th Cir. 1995) (stating that sentencing court must consider all relevant conduct "whether uncharged, charged, or charged and dismissed"). The sentencing court may make findings regarding disputed facts based on the evidence presented at a jury trial. *United States v. Maxwell*, 778 F.3d 719, 737 (8th Cir. 2015) ("Here, . . . the district court permissibly 'made its findings with respect to the disputed [facts] based on the evidence at trial, not on the PSR.'" (second alteration in original) (quoting *United States v. Theimer*, 557 F.3d 576, 578 (8th Cir. 2009))). "Due to the differing burdens of proof at trial and sentencing, the sentencing judge may consider facts underlying an acquitted count that it finds to be sufficiently reliable." *Id.* "Because a jury's acquittal establishes only that the government failed to prove an essential element of an offense beyond a reasonable doubt, it is well settled that a sentencing court may consider the conduct underlying an acquitted charge so long as that conduct has been proved by a preponderance of the evidence." *United States v. Lasley*, 832 F.3d 910, 914 (8th Cir. 2016) (internal quotations omitted). "[W]e have 'repeatedly held that due process never requires applying more than a preponderance of the evidence standard for finding sentencing facts . . . .'" *United States v. Martin*, 777 F.3d 984, 997–98 (8th Cir. 2015) (quoting *United States v. Mustafa*, 695 F.3d 860, 862 (8th Cir. 2012)).

So, even if the jury had only found Wood guilty beyond a reasonable doubt of possession of one of the guns but acquitted him of possession of the other, the district court would still have been able to consider Wood's possession of both guns provided that such possession of the second had been proven by a preponderance of the evidence.

Hence, if a preponderance of evidence demonstrates Wood's possession of both firearms, then the district court could not have been clearly erroneous to consider his possession of both in sentencing.

### A. *U.S.S.G. § 2K2.1(b)(4)*

U.S.S.G. § 2K2.1(b)(4) provides for a two-level increase to the base offense level "[i]f any firearm . . . was stolen." This enhancement "applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen." U.S.S.G. § 2K2.1, cmt. n.8(B). The Guidelines do not define the term "stolen," but we have interpreted the term to include "all felonious or wrongful takings with the intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." *United States v. Bates*, 584 F.3d 1105, 1109 (8th Cir. 2009).

Wood challenges the application of this sentencing enhancement arguing that the government failed to prove that the firearm in question, the .40 caliber pistol, was stolen. This fact need only be proven by a preponderance of the evidence for the enhancement to apply, and there is enough evidence to satisfy this standard. Dawson's testimony at trial established that the .40 caliber pistol was stolen. The court was not clearly erroneous in determining that the .40 caliber pistol had been stolen. We therefore decline to disturb its imposition of an enhancement under § 2K2.1(b)(4).

### B. *U.S.S.G. § 2K2.1(a)(1)*

U.S.S.G. § 2K2.1(a)(1) provides for a base offense level of 26 if "(A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; . . . and (B) the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." For purposes of this guideline, "[a] large capacity magazine is one that can accept more than fifteen rounds of ammunition." *Reid*, 827 F.3d at 801 (citing U.S.S.G. § 2K2.1, cmt. n.2).

As Wood acknowledges in his brief, the government presented photographic evidence that the 9mm pistol was capable of accepting a large capacity magazine.

-10-

Additionally, Wood does not contest that the pistol was capable of accepting such magazines. Rather, he contests the correctness of the court's finding that he possessed the 9mm pistol at all.

The photographs on Wood's cell phone that depict the 9mm pistol at Dawson's house where Wood often stayed make it more likely than not that he possessed the firearm. Therefore, the district court was not clearly erroneous in imposing a large-capacity magazine enhancement pursuant to U.S.S.G. § 2K2.1(a)(1).

### III. *Conclusion*

Accordingly, we affirm the district court.

_____