# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1386

_____

United States of America

*Plaintiff - Appellee*

v.

JT Myore

*Defendant - Appellant*

_____

No. 24-1390

_____

United States of America

*Plaintiff - Appellee*

v.

JT Myore

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of South Dakota - Western

_____

Submitted: December 19, 2024
Filed: June 27, 2025

_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.
_____

LOKEN, Circuit Judge.

In late September 2023, a District of South Dakota jury convicted JT Myore of aiding and abetting carjacking and brandishing a firearm during a crime of violence on August 25, 2019, and of robbery on May 3, 2021, in violation of 18 U.S.C. §§ 2119(1), 2111, 1153, 2, and 924(c)(1)(A)(ii) and (d)(1). In early November 2023, a second jury convicted Myore of second degree murder for a separate incident on May 3, 2021. After a consolidated sentencing hearing in February 2024, the district court[1] sentenced Myore to 540 months imprisonment. He appeals both convictions and the combined sentence. Regarding the carjacking and robbery convictions, he argues (1) there was insufficient evidence to support the carjacking and brandishing verdict for the August 2019 incident and (2) the district court violated his Fifth and Sixth Amendment rights by considering acquitted conduct from the May 2021 incident at sentencing. Regarding the second conviction, Myore argues the district court erred (1) in instructing the jury on the second-degree murder charge and (2) in applying an obstruction of justice sentencing enhancement based on his alleged perjury at the second trial. The facts underlying the two convictions differ significantly, so we will separately discuss the issues relating to each and the applicable standards of review. We affirm both convictions and the sentence.

## I. The Carjacking and Firearm Convictions

**A. Sufficiency of the Evidence.** The jury convicted Myore of carjacking and brandishing a firearm during a crime of violence on August 25, 2019. Myore argues, as he did in a motion for judgment of acquittal before the district court, that there was

---

[1]The Honorable Roberto Lange, United States District Judge for the District of South Dakota.

insufficient evidence to convict him of these offenses.[2] We review this issue *de novo*, "apply[ing] the same standard of review to the district court's ruling on a motion for judgment of acquittal as we do to a sufficiency of the evidence challenge." United States v. Broeker, 27 F.4th 1331, 1335 (8th Cir. 2022) (quotation omitted). "We summarize the relevant trial evidence in the light most favorable to the verdict." United States v. Clark, 115 F.4th 895, 896 (8th Cir. 2024) (quotation omitted). We will uphold the verdict "[i]f there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." United States v. Long Pumpkin, 56 F.4th 604, 610 (8th Cir. 2022) (quotation omitted), cert. denied, 144 S. Ct. 575 (2024).

The victim of the August 2019 incident was Arlen Swallow, then in a relationship with Mary Jo Two Two. Myore previously had a long relationship and two children with Two Two that ended in 2016. At trial, Swallow testified that while driving to his house with other passengers in a black Ford Freestyle owned by Two Two, he saw Myore and RJ Running Shield waving him down from another vehicle. Knowing there was an issue about Swallow driving Two Two's car, Swallow drove a block to Myore's residence and parked in the driveway. "I was going to let them take the car," he testified. The men followed close behind and blocked the Ford Freestyle in the driveway. Swallow told his passengers to exit the car. With his memory refreshed by a statement he made to police at the time, Swallow testified Myore and Running Shield exited their vehicle, approached the Ford Freestyle, and yelled: "We want the car; we want the car." Swallow exited the Ford Freestyle to defend himself and moved toward his nearby house.

---

[2]The jury convicted Myore of robbery but acquitted him of carjacking during the separate incident on May 3, 2021. Myore does not challenge the sufficiency of the evidence to convict him of robbery. However, the May 2021 incident is the subject of his sentencing appeal.

Initially, Swallow testified that he did not see a gun before he reached his front porch, where he heard multiple gunshots fired behind him and turned to see Running Shield putting a gun in his pocket.[3] He testified he did not see Myore with a gun and thought he only "might have" or "probably" had one. However, after having his recollection refreshed with his signed written statement to police that day, Swallow testified that both men had guns out as they approached the Ford Freestyle demanding that Swallow give them the car. Swallow also testified that he had previously seen Myore possessing a gun similar to one of the guns he saw that day. Swallow testified that after he heard the gunshots, Myore and Running Shield walked toward the Ford Freestyle, Myore "jump[ed] in the black car and they take off speeding."

**(1) The Carjacking Conviction.** To establish a carjacking offense, the government must prove beyond a reasonable doubt that "(1) the defendant took or attempted to take a motor vehicle from the person or presence of another by force and violence or by intimidation; (2) the defendant acted with the intent to cause death or serious bodily harm; and (3) the motor vehicle involved has been transported, shipped, or received in interstate or foreign commerce." United States v. Wright, 246 F.3d 1123, 1126 (8th Cir.), cert. denied, 534 U.S. 919 (2001); see 18 U.S.C. § 2119.

In his motion for judgment of acquittal, Myore argued the government failed to prove that he took Two Two's Ford Freestyle with "the intent to cause death or serious bodily injury" and that Swallow's "abandonment of the vehicle" was not due to threats but only "generalized concern of potential violence." The district court found that Myore acted with the requisite intent:

---

[3]Shell casings found at the scene were fired from a pistol later seized from Running Shield.

Myore plainly intended to, and did, take the Ford Freestyle from Swallow. Myore and Running Shield confronted Swallow aggressively by running toward him and yelling, were armed when doing so, and at least Running Shield fired shots into the air after Swallow turned and began walking away from the Ford Freestyle. Such circumstances allow for a reasonable jury to find beyond a reasonable doubt that, at the time of the taking, Myore had a conditional intent to cause serious harm or death to obtain the vehicle. In fact, Swallow believed there was a possibility of this exact thing, which was not an unreasonable concern since he had seen Myore with a gun and Myore previously had been in a relationship with Swallow's girlfriend, Mary Jo Two Two. Even if Myore did not actively use a firearm or violence to steal the Ford Freestyle, as he argues, a reasonable jury could still conclude Myore's conduct showed intent to cause serious bodily harm or death if it became necessary to take the vehicle.

On appeal, Myore's argument shifts from the second element -- intent -- to the first element -- whether Myore took the Ford Freestyle by force and violence or by intimidation.[4] He argues that the evidence does not establish use of force prior to completion of the taking. "A 'taking' is the acquisition by the robber of possession, dominion or control of the property for some period of time." Long Pumpkin, 56 F.4th at 610 (quotation omitted). This "raises the not insubstantial problem of delineating the precise temporal limits of the crime of carjacking." Id. (quotation omitted). For a carjacking offense, a "taking" occurs at the "'precise moment' that the vehicle [is] seized" and is "complete once the defendant . . . secure[s] initial control over the property in question." United States v. Petruk, 781 F.3d 438, 443 (8th Cir. 2015) (quotation omitted). We have repeatedly held, however, that "[i]t is

---

[4]We conclude there was sufficient evidence Myore had the requisite carjacking intent. Swallow testified that Myore signaled Swallow to stop, seemed dissatisfied with Swallow's use of the Ford Freestyle, followed close behind as Swallow drove home, physically blocked the Ford Freestyle in the driveway, and approached the car with another man, presenting guns and demanding the car.

possible for a carjacking scenario to present multiple points in time when a reasonable jury could find that a taking occurred" and that "[a] jury's reasonable finding that the taking occurred at one of those points in time will be upheld, even if another reasonable jury could have found that the taking occurred earlier." Long Pumpkin, 56 F.4th at 611; see United States v. Clark, 115 F.4th 895 (8th Cir. 2024).

Here, a reasonable jury could find, based on Swallow's trial testimony with his recollection refreshed by a contemporaneous police statement, that the taking occurred when Myore and Running Shield blocked the Ford Freestyle in the driveway, exited their vehicle with guns, demanded control of the vehicle, and the frightened and intimidated Swallow "abandoned the vehicle" to the carjackers. The district court's above quoted analysis explains why the jury could reasonably reject Myore's contention that the taking was complete when Myore, while driving behind the Ford Freestyle, decided to demand its surrender. That was before any force was used or any weapon was brandished.

Myore argues the district court erred because the evidence supporting the taking of the car with weapons brandished was Swallow's testimony that the court deemed "wishy washy." Swallow was cross-examined specifically about his inconsistent recollection, then further questioned on redirect and recross-examination on this issue after his memory was refreshed. Presented with this "wishy washy" testimony, the jury found Myore guilty of carjacking beyond a reasonable doubt. "We again emphasize that the jury's credibility determinations are well-nigh unreviewable because the jury is in the best position to assess the credibility of witnesses and resolve inconsistent testimony." United States v. Mayfield, 909 F.3d 956, 963 (8th Cir. 2018) (quotation omitted), cert. denied, 139 S. Ct. 2628 (2019). "It is the function of the jury, not an appellate court, to resolve conflicts in testimony or judge the credibility of witnesses." United States v. Henderson,

11 F.4th 713, 716 (8th Cir. 2021) (quotation omitted), <u>cert. denied</u>, 142 S. Ct. 1696 (2022).

**(2) The Brandishing Conviction.** The penalties for federal firearms convictions are prescribed in 18 U.S.C. § 924. Section 924(c)(1)(A)(ii) provides that, unless a greater minimum sentence is otherwise provided, "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who . . . possesses a firearm," shall be subject to an additional sentence of not less than seven years if the firearm is brandished. The jury convicted Myore of knowingly using and brandishing a firearm during and in relation to the August 2019 carjacking. See <u>United States v. Oliver</u>, 90 F.4th 1222, 1225 (8th Cir. 2024).

As explained, the evidence was sufficient to permit a reasonable jury to find a completed carjacking offense when Myore and Running Shield blocked the Ford Freestyle, exited their vehicle with guns, demanded control of the vehicle, and victim Swallow "abandoned the vehicle" to the carjackers. On appeal, relying on <u>Long Pumpkin</u>, 56 F.4th at 614, Myore argues the evidence was insufficient to convict him of using or brandishing a firearm prior to completion of the taking because Swallow "relinquished" the Ford Freestyle before any guns were brandished. We disagree.

In <u>Long Pumpkin</u> we concluded that *discharge* of a firearm after the carjackers drove away in the stolen vehicle was not "during" the initial carjacking. Therefore, we vacated the discharge convictions under § 924(c)(1)(A)(iii) and ordered them reduced to § 924(c)(1)(A)(i) convictions for use of a firearm during and in relation to a crime of violence. In this case, a reasonable jury could find, based on Swallow's testimony, that Myore and Running Shield brandished guns to force Swallow to surrender the vehicle and then fired shots before driving off in the stolen vehicle. This was sufficient evidence to convict Myore under § 924(c)(1)(A)(ii) of knowingly brandishing a firearm "during and in relation to" a crime of violence.

**(3) The Sentencing Enhancement Issue.** In the May 3, 2021 incident, the government charged Myore with robbery and carjacking when Myore and other men confronted Robert Two Dogs. The other men pinned Two Dogs to the ground, broke the window of his red Toyota Celica, and assaulted him repeatedly with a baseball bat, causing head injuries and a fractured arm. Myore and an associate fled the scene in Two Dogs' red car. The jury found Myore guilty of robbery within Indian country in violation of 18 U.S.C. §§ 2111 and 1153(a) but acquitted him of carjacking, assault resulting in serious bodily injury, and assault with a dangerous weapon.

Section 2B3.1(a) of the advisory Guidelines provides that the base offense level for robbery is 20. The Presentence Investigation Report (PSR) recommended increasing Myore's base offense level for three of the Specific Offense Characteristics listed in USSG § 2B3.1(b) -- a 4 level increase because a dangerous weapon was used (the baseball bat), § 2B3.1(b)(2)(D); a 4 level increase because Two Dogs sustained serious bodily injury, § 2B3.1(b)(3)(B); and a 2 level increase because the offense involved carjacking, § 2B3.1(b)(5). These offense characteristics increased Myore's base offense level from 20 to 30. The district court adopted the PSR and these recommendations, overruling Myore's objections.

On appeal, Myore renews his argument that the district court's use of acquitted conduct to increase his sentence violates his Fifth and Sixth Amendment rights. We "[r]eview[] the district court's factual findings for clear error, and its interpretation and application of the guidelines *de novo*." United States v. McGee, 890 F.3d 730, 733 (8th Cir. 2018). Myore's contention is contrary to our established precedent. "Because a jury's acquittal establishes only that the government failed to prove an essential element of an offense beyond a reasonable doubt, it is well settled that a sentencing court may consider the conduct underlying an acquitted charge so long as that conduct has been proved by a preponderance of the evidence." United States v. Lasley, 832 F.3d 910, 914 (8th Cir. 2016) (quotation omitted), cert. denied, 580 U.S. 1096 (2017); see United States v. Martin, 777 F.3d 984, 997-98 (8th Cir.),

cert. denied, 575 U.S. 978 (2015). "[D]ue process never requires applying more than a preponderance-of-the-evidence standard for finding sentencing facts, even where the fact-finding has an extremely disproportionate impact on the defendant's advisory guidelines sentencing range." United States v. Mustafa, 695 F.3d 860, 862 (8th Cir. 2012) (cleaned up). These constitutional issues are the subject of ongoing debate, but our panel is bound by this controlling Eighth Circuit precedent.

At sentencing, the district court determined, by a preponderance of the evidence, that Myore was present at the robbery scene and engaged in acts with other alleged assailants that warranted the base offense level increases: using a baseball bat to break Two Dogs' arm, causing serious head injuries, and driving away in Two Dogs' red Toyota Celica. "Our well established precedent thus disposes of this sentencing challenge." Martin, 777 F.3d at 998.

## II. The Second-Degree Murder Conviction

Later in the day after the May 3, 2021 robbery, officers responded to a "Person Down" call regarding the stabbing of Leon Lakota, who was "bleeding and possibly deceased." Arriving at the scene, police found three people in a van, April Stoldt, Lance Red Cloud, and Mayone Lakota, the victim's wife. Officer Michael Carlow found the victim, who was later pronounced dead from three stab wounds to his torso. Leading away from the victim was a blood trail that ended approximately 100 yards from the trailer in which Red Cloud resided. In a consensual search of the trailer, officers found Myore lying in bed in a back room. Officers found a pair of blood-splattered white Nike shoes. Myore, during initial police questioning and a later interview, denied the Nike shoes were his, claiming he wore black shoes. No black shoes were found. DNA testing of the Nike shoes determined the blood splatter was the victim's and Myore was a match for DNA inside the shoe.

Two months later, Myore called 911 and confessed to killing Leon Lakota. Myore identified himself as the killer, Leon Lakota as the victim, and stated that the murder occurred "about three months" before. Minutes before the call, a Facebook post from Myore's account contained another confession: "Leon Lakota he was a molester that's y I killed him u can locate me in Chamberlain. So get of [sic] my brother's bak." Concurrently with the call and Facebook post, Myore was privately messaging someone from his cell phone, referencing the killing and his involvement -- "Thinking of turning myself in"; "I'm gonna be going away for murder"; "He was a molestar [sic] named Leon Lakota."

At trial, the jury heard varying accounts of the events leading up to Leon Lakota's death. After Two Dogs was beaten, Myore drove off in Two Dogs' damaged red car, ending up with JJ Eagle Bull at the trailer where Lance Red Cloud was staying. JJ left. Lance, Leon and Mayonne Lakota, April Stoldt, and Myore drank heavily, and at some point a dispute developed. Mayonne accused Leon of molesting their grandchild. April recalled a shoving match between Myore and Leon. Leon then went behind the trailer and never returned. Mayonne found Leon staggering and bloody some minutes later; law enforcement were called but arrived too late to save him. Testifying in his own defense, Myore denied he called 911 and made the Facebook post. He denied any memory of confessing and asserted that, if he did, he was not thinking clearly due to coming down from a methamphetamine high, being drunk, and being awake for days. He again denied the bloody shoes found in the trailer were his.

The jury found Myore guilty of the second-degree murder of Leon Lakota. He appeals his conviction and sentence, arguing the district court improperly instructed the jury on the second-degree murder charge and misapplied an obstruction of justice enhancement in imposing his sentence.

**A. The Jury Instruction Issue.** A federal murder conviction requires the government prove beyond a reasonable doubt that the defendant acted "with malice aforethought." Any murder that is not murder in the first degree, as defined, "is murder in the second degree." 18 U.S.C. § 1111(a). Voluntary manslaughter "is the unlawful killing of a human being without malice . . . [u]pon a sudden quarrel or heat of passion." 18 U.S.C. § 1112(a). During the second day of trial, the government moved the court to instruct the jury on the lesser included offense of voluntary manslaughter, as well as on the charged offense of second-degree murder. Defense counsel opposed the motion: "Our defense is that Mr. Myore was not involved in the crime at all. So it's not a degree of involvement. It's involvement, period." The district court overruled the objection because we have held that either party may request a lesser included offense instruction, voluntary manslaughter is a lesser included offense of second-degree murder, and the evidence provided a factual basis for the jury to find that Myore, "rather than having malice aforethought in the stabbing . . . was acting on heat of passion."

After the close of the evidence, the district court instructed the jury, without objection, on the elements of second degree murder, the definition of malice aforethought, the elements of the voluntary manslaughter lesser included offense, and the definition of "heat of passion." These instructions tracked the language in Eighth Circuit Model Jury Instructions (Criminal) 6.18.1111B, 6.18.1111A-1, 6.18.1111A-3, and 6.18.1112B (2023).

The instructions directed the jury to determine beyond a reasonable doubt whether Myore unlawfully killed Leon Lakota "with malice aforethought," in which case he was guilty of the second-degree murder charge. The instructions then addressed the lesser included offense of voluntary manslaughter:

> If you unanimously find the Defendant "not guilty" of second-degree murder or if after reasonable efforts you are unable to determine the guilt or innocence of the Defendant as to the crime of second degree

murder as charged in the Indictment, you then must consider whether Defendant is guilty or not guilty of voluntary manslaughter as set forth in this instruction.

. . . The crime of voluntary manslaughter has four elements, which are:

\* \* \* \* \*

**_Two_, the Defendant did not act with malice aforethought but instead acted in the heat of passion caused by adequate provocation, as defined in Instruction No. 11;**

On appeal, Myore argues for the first time that the district court's jury instructions violated his due process right to require the prosecution to prove beyond a reasonable doubt "every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The district court committed plain error, Myore argues, because the second-degree murder instruction failed to instruct that the prosecution must prove the absence of heat of passion beyond a reasonable doubt, which unconstitutionally shifted the burden of proof on this issue to the defendant.

To prevail on plain error review, Myore must show "(1) an error, (2) that is clear or obvious, and (3) that affected [his] substantial rights, which in the ordinary case means he must demonstrate it affected the outcome of the district court proceedings." United States v. Helper, 7 F.4th 706, 711 (8th Cir. 2021) (quotation omitted). We will only remedy an error if "it seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quotation omitted). Myore has the burden of "establishing each of these prongs." United States v. Wells, 63 F.4th 1180, 1184 (8th Cir. 2023). "The district court has wide discretion in formulating appropriate jury instructions, and rarely will an improper instruction justify reversal of a criminal conviction when no objection has been made in the trial court." United

States v. Mink, 9 F.4th 590, 610 (8th Cir. 2021) (cleaned up), cert. denied, 142 S. Ct. 1166 (2022).

In a series of cases reviewing state court murder convictions, the Supreme Court held "that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense," Patterson v. New York, 432 U.S. 197, 215 (1977), citing Mullaney v. Wilbur, 421 U.S. 684 (1975). But "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required" and Mullaney "should not be so broadly read." Id. at 210, 215. The State is not required to "disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." Id. at 210. The State in Patterson was required to prove every fact necessary to commit the crime charged. In ruling that New York law could constitutionally require the defendant to prove the affirmative defense of extreme emotional disturbance, the Court reaffirmed Leland v. Oregon, 343 U.S. 790, 795-97 (1952) (insanity defense); accord Martin v. Ohio, 480 U.S. 228, 233 (1987) (self defense).

In Iromuanya v. Frakes, a more recent case reviewing the denial of federal habeas relief from a second-degree murder conviction under Nebraska law based on this alleged due process violation, we summarized our interpretation of Mullaney, Patterson, and Martin:

> [D]ue process requires the state to prove, beyond a reasonable doubt, every fact necessary to constitute the crime with which a defendant is charged. Due process does not, however, require the state to disprove every possible fact that would mitigate or excuse the defendant's culpability. Nor does a state legislature violate a defendant's due process rights when it allocates the burden of proving an affirmative defense to the defendant when the defense merely excuses conduct that would otherwise be punishable. But when a "defense" necessarily negates an element of an offense, it is not a true affirmative defense, and

-13-

the legislature may not allocate to the defendant the burden of proving the defense.

866 F.3d 872, 879 (8th Cir. 2017) (cleaned up). Myore's argument raises the unresolved question whether "heat of passion" is an affirmative defense to a second degree murder charge, or whether its presence "negates" an element of that offense. In Iromuanya, we did not address that due process question.

Unlike Iromuanya and the Supreme Court decisions it interpreted, this case involves federal homicide crimes of second-degree murder and voluntary manslaughter. The Supreme Court has not directly addressed this burden of proof issue. A number of our sister Circuits have. Their rulings appear on the surface to be inconsistent but may well be reconcilable. In United States v. Lofton, a Tenth Circuit panel held "that a defendant in a federal murder case *who has sufficiently raised a heat of passion defense* is entitled to instructions informing the jury . . . of the government's duty to prove beyond a reasonable doubt the absence of heat of passion in order to obtain a murder conviction." 776 F.2d 918, 920 (10th Cir. 1985) (emphasis added). Likewise, in United States v. Lesina, a Ninth Circuit panel "construe[d] Mullaney to require jury instructions for murder to state that the government bears the burden of proving beyond a reasonable doubt the absence of heat of passion or sudden quarrel *where that defense is raised*." 833 F.2d 156, 160 (9th Cir. 1987) (emphasis added); cf. United States v. Delaney, 717 F.3d 553, 559 (7th Cir. 2013) (where a Seventh Circuit panel, in affirming because "the jury had solid grounds for finding murder rather than manslaughter," observed that "[p]robably 'heat of passion' shouldn't be thought a defense").

The Eighth Circuit's Model Second Degree Murder Jury Instruction on the malice aforethought element is not inconsistent with these decisions:

> 5. It is a defense to murder that the defendant acted in the heat of passion. *If the defense of heat of passion is raised,* element two should

-14-

be modified to add "and not in the heat of passion," and Instruction 6.18.113A-3 [defining heat of passion] should be given.

Eighth Circuit Model Jury Instruction (Criminal) 6.18.1111B (2023), Notes on Use 5 (emphasis added), citing Mullaney, 421 U.S. at 697-98, 704. Because Myore did not raise heat of passion as a defense, the case law on which he relies does not directly support his burden-of-proof contention.

At trial, Myore never raised heat of passion as a defense; indeed, he opposed the voluntary manslaughter lesser included offense instruction which the government requested, no doubt because the trial evidence raised the possibility that the jury would reject the second-degree murder crime charged in the indictment. To our knowledge, no federal case, in our circuit or elsewhere, has held what Myore urges -- that Winship and Mullaney *require* district courts in second-degree murder cases to instruct the jury that the government must prove the killing was not done in the heat of passion when the defense has not pleaded or presented evidence in support of a heat of passion "defense," has not proposed that jury instruction or objected to its absence, and has argued to the jury that "I did not do it," not that "I did it in the heat of passion." Instead of timely raising the issue, Myore asks us to conclude that the district court committed plain error when it did not *sua sponte* extend existing precedent to include this requirement. We decline to do so.

We conclude that even if there was instruction error -- an unresolved question -- there simply was no plain error because Myore fails to meet the other prongs of plain error review. The legal error was not "clear or obvious, rather than subject to reasonable dispute." Wells, 63 F.4th at 1185. Inconsistent guidance from case law and other sources on this difficult issue makes any error "subject to reasonable dispute." United States v. Pazour, 609 F.3d 950, 953 (8th Cir. 2010). Myore's defense was that he was not involved in the crime at all. "[T]here was no plain error in failing to instruct the jury on a defense that was not addressed by counsel." United States v. Yellow Hawk, 276 F.3d 953, 956 (8th Cir. 2002); cf. United States v.

-15-

Manes, 603 F.3d 451, 458-59 (8th Cir. 2010) ("The failure to instruct the jury on a theory which was never presented to it could not have affected [the defendant's] substantial rights.").

More importantly, given the jury's finding that Myore killed with malice aforethought, he cannot show that his substantial rights were affected, that is, had the district court included the instruction he failed to request, "there is a 'reasonable probability' that he would have been acquitted." Greer v. United States, 593 U.S. 503, 504 (2021). Neither the government nor Myore argued this crime was the product of heat of passion provocation.

For this reason, we need not decide whether the Eighth Circuit Model "step instruction" given here would be unconstitutional under Mullaney and its progeny if given in a case where the defendant put a heat of passion "defense" at issue.

**B. The Sentencing Issue.** The PSR recommended a two-level enhancement under USSG § 3C1.1 for obstruction of justice because Myore testified falsely at trial. The district court adopted the PSR and this adjustment, increasing the base offense level for the second-degree murder offense and the total offense level for the convictions in both trials from 38 to 40. With this total offense level and a criminal history category of III, the advisory guidelines range increased from 292 to 365 months to 360 months to life imprisonment. The district court sentenced Myore to 504 months imprisonment for the second-degree murder conviction plus a consecutive 36 months for the first trial convictions.

At sentencing, Myore objected to the obstruction enhancement, asserting he did not provide false testimony or commit perjury at trial because he "testified consistent with his memory at the time." The court overruled the objection:

Obstruction of justice can occur when a defendant knowingly testifies falsely. Given the jury's verdict finding him guilty of second degree murder, the Court does believe that the jury [believed] and this Court in turn [believes] that Mr. Myore did not testify entirely truthfully before the jury.

He did deny connection with the shoes and yet his DNA was found inside the toe area of one of the shoes.

\* \* \* \* \*

[H]is testimony generally exculpating himself and providing an explanation for the 911 call -- and I believe there was also a posting on Facebook whereby he confesses -- . . . wasn't credible and the Court does believe that the two-level enhancement for obstruction of justice appropriately applies to the guideline range calculation on the second degree murder case.

On appeal, Myore first argues that his trial testimony regarding the May 2021 incident and his subsequent confessions were not "willful or deliberate falsity" because mistakes in his recounting of those matters largely resulted from intoxication and use of drugs.[5] Second, he argues the district court failed to review the evidence and make independent findings establishing obstruction of justice.

"Committing perjury at trial constitutes an obstruction of justice within the meaning of § 3C1.1." United States v. Flores, 362 F.3d 1030, 1037 (8th Cir. 2004). The enhancement applies if Myore "testifie[d] falsely under oath in regard to a material matter and [did] so willfully rather than out of confusion or mistake." United States v. Vickers, 528 F.3d 1116, 1122 (8th Cir. 2008) (quotation omitted). "The

---

[5]The advisory guidelines provide for a two-level adjustment if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." § 3C1.1.

government bears the burden of proof that this enhancement should be applied." United States v. Cox, 985 F.2d 427, 432 (8th Cir. 1993). "We review factual findings underlying an obstruction-of-justice enhancement for clear error." United States v. Griggs, 54 F.4th 531, 537 (8th Cir. 2022), cert. denied, 143 S. Ct. 1792 (2023). We affirm "conclusory findings of perjury when those findings [are] adequately supported by the record." United States v. Gomez-Diaz, 911 F.3d 931, 936 (8th Cir. 2018).

If a defendant objects, "a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same." United States v. Dunnigan, 507 U.S. 87, 95 (1993). All that is required of the district court is to make a finding independent from the jury. The Court explained this is an exceedingly minimal standard so long as the district court records that it reviewed the matter and has determined obstruction existed. See id.; United States v. Nshanian, 821 F.3d 1013, 1018 (8th Cir. 2016).

After careful review of the record, we conclude the district court's findings at sentencing are not clearly erroneous. The court repeatedly stated its independent belief that Myore "did not testify entirely truthfully" about either the Nike shoes or his multiple confessions.

For the foregoing reasons, the judgments of the district court are affirmed.

_____